**Wayne Joshua LEE, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 05–02–01514–CR.**

Court of Appeals of Texas,
Dallas.

Sept. 3, 2004.

---

3. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex.1991).

4. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex.1996).

Richard Alan Anderson, Burleson, Pate & Gibson L.L.P., Dallas, for Appellant.

John R. Roach, Collin County District Attorney, M. Emily Johnson–Liu, McKinney, for the State.

Before Chief Justice THOMAS and

Justices FITZGERALD and MAZZANT.[1]

## OPINION

Opinion by Chief Justice THOMAS.

A jury convicted Wayne Joshua Lee of money laundering and assessed punishment at ten years. Appellant challenges his conviction on the grounds of insufficiency of the evidence, trial court error in admitting the out-of-court statement of a codefendant, and charge error. We conclude the evidence is legally sufficient to support the conviction, but the admission of the codefendant's out-of-court statement violated the Confrontation Clause of the Sixth Amendment. Because we conclude the error was harmful, we reverse the trial court's judgment and remand the case for further proceedings.

## FACTUAL BACKGROUND

While on criminal interdiction patrol, Plano Police Officers David Waddell and Jon Britton stopped a vehicle for speeding. The traffic stop was recorded by a car-mounted camera, and one of the officers was wearing a microphone to record the audio. The occupants were asked to provide identification. Appellant was a resident of Canada. Tuan Pham, the driver, resided in California. The car was rented, and the rental car agreement listed Pham as an additional driver. Pham stated that he and appellant had driven from Seattle to Houston, stayed a day in Houston, and were returning to Seattle. Pham gave consent to search the car. There were no souvenirs or other items in the car to indicate Pham and appellant were on a pleasure trip or vacation. Appellant did not know the name or address of the person they had visited in Houston.

In the trunk, Officer Waddell discovered a purple duffle bag filled with a large amount of cash. Appellant said the money belonged to him. He refused to explain where he got the money, but appellant did say that he brought the money with him from Canada. When asked whether he had paid taxes on the money, appellant said he had not.

The officers found a writing tablet in the car with a list of cities and numbers written on it. Beside the word "Dallas" was the number "190." The "190" did not match the mileage between Dallas and any of the other cities listed. The officers later determined there was a little over $190,000 in the duffle bag. Officer Waddell arrested appellant and put him in the squad car while Officer Britton spoke to Pham. Officer Britton testified he asked Pham about the source of the cash as follows: "[D]id [appellant] get the money from selling ecstasy, and he said, yes."

Officer Danny Hartschuh testified that he was a canine officer and that his dog was trained to identify the odor of five different kinds of narcotics, including methamphetamine (a component of ecstacy). The drug dog reacted positively to the purple bag, indicating the presence of narcotic odor on the bag. There was no testimony to identify which of the five narcotics was the source of the odor, and no narcotics were found in the bag or in the car.

The money found in the car was mostly in twenty-dollar denominations, which Officer Britton testified, in his experience, was the most common denomination used in narcotics transactions. Different denominations were banded together, and there

1. The Honorable Amos Mazzant, Justice, succeeded the Honorable Tom James, a member of the original panel, upon Justice James's retirement. Justice Mazzant has reviewed the briefs and the record before the Court.

was testimony that this is not the normal way a bank would band the money.

A U.S. Customs agent testified that anyone entering the United States with more than $10,000 cash must declare it on Customs forms. They are asked at the border whether they are bringing in cash and told to declare anything over $10,000. These records are maintained by Customs. The witness checked, and he found no declaration by appellant for the dates when he said he came from Canada into the United States.

John Lee, appellant's brother, testified for the defense. He stated that appellant had worked at various jobs since moving to Canada from Vietnam. Appellant lived with either friends or family and had minimal expenses. Like many Vietnamese, his cultural background led him to convert his Canadian money into U.S. dollars and to save as much as he could. Appellant did not put his money in a bank, but instead kept it in a safe in his bedroom.

According to Lee, appellant asked for a leave of absence from his last job in order to travel. In preparation for his "vacation," he sold his house and cleared $30,000. Appellant cashed in his retirement funds and received $20,000. He sold some stock and received $85,000. He got a $27,000 bank loan and could have gotten $100,000 in credit card cash advances. Lee testified that appellant had probably accumulated over a quarter of a million dollars by the time he left on his trip. However, Lee also acknowledged that he had never seen appellant in possession of such a large amount of money.

Appellant's friend Ron Fichtner testified he was an accountant and had looked at appellant's financial records for the four years prior to the commencement of the trip. He said that he was familiar with the Vietnamese tendency to rely heavily on cash transactions. This witness estimated appellant could have had $246,979 by the time he left on his "vacation." Fichtner admitted his figures were based upon documents given to him by appellant. He also conceded he did not take into consideration certain expenditures and payments made by appellant. Fichtner also acknowledged he had no documentation to show appellant had kept all of the money he had received in income, loans, and cash advances. Like Lee, he had never seen appellant in possession of such a large amount of cash.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant argues that the evidence is legally insufficient to support his conviction for money laundering. A person commits the offense of money laundering if he knowingly acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity. TEX. PEN.CODE ANN. § 34.02(a) (Vernon 2003). "Criminal activity" means any offense classified as a felony under Texas or federal law or any offense under the laws of another state punishable by confinement for more than one year. *Id.* § 34.01(1). In this case, the indictment and jury charge authorized the jury to convict appellant of money laundering if he possessed or transported the proceeds of a criminal activity. The criminal activity alleged in the indictment was either the delivery of a controlled substance or a violation of the federal currency importation reporting requirements. 31 U.S.C. § 5316 (2003).

To commit the offense of delivery of a controlled substance, appellant must intentionally and knowingly deliver or possess with the intent to deliver a controlled substance in Penalty Groups 1–4 as listed in the health and safety code. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112–.114 (Vernon 2003). Methamphetamine and ecstacy are

listed in the penalty groups as controlled substances. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.103(a)(1) (Vernon Supp.2004). To prove an offense under 31 United States Code section 5316, the State must show that appellant knowingly transported more than $10,000 cash into the United States and failed to file a report prescribed by the Secretary of the Treasury.

The standard for reviewing a legal sufficiency challenge to the evidence is whether, viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 967 S.W.2d 410, 411 (Tex.Crim.App.1998). All evidence admitted at trial, including improperly admitted evidence, is considered in a legal sufficiency review. *Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App.1999).

The jury charge in this case authorized the jury to convict on two different theories. The verdict of guilty will be upheld if the evidence is sufficient on any one of the theories. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003). There was evidence as to both of the theories upon which the jury was authorized to convict. Pham's statement that the source of the money was from the sale of ecstacy, the positive reaction by the drug dog to the bag, the suspicious bundling and denominations of the cash, and the lack of any evidence to support the vacation account of appellant all support the charge of delivery of a controlled substance. Appellant's statement that he brought the money from Canada, the testimony of the customs agent that all persons entering the country are advised of their duty to declare sums in excess of $10,000, and the testimony that there was no declaration in U.S. Customs' records support the charge of violating the federal reporting statutes. Viewing the evidence in the light most favorable to the judgment, including improperly admitted evidence, a rational trier of fact could have found the essential elements of both offenses as charged in the indictment beyond a reasonable doubt. Accordingly, we conclude the evidence is legally sufficient to sustain the conviction. We overrule appellant's complaint.

## CONFRONTATION CLAUSE

■ Appellant contends that the testimony relating to Pham's statement that the cash in the purple bag was from the sale of ecstacy violated his right of confrontation under the Sixth Amendment of the United States Constitution. He argues that a non-testifying codefendant's out-of-court statement to a police officer is testimonial and is, therefore, barred by the Confrontation Clause under *Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).[2]

■ In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying the Sixth Amendment to the States). In *Crawford,* the Supreme Court recently reexamined the admissibility of out-of-court hearsay statements under the Confrontation Clause.

2. This Court will address only appellant's federal constitutional claim because appellant fails to make a separate argument under the Texas Constitution or to cite any Texas cases. *See Dewberry v. State,* 4 S.W.3d 735, 746 (Tex.Crim.App.1999).

Before *Crawford,* admissibility of such statements was governed by *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Under *Roberts,* an unavailable witness's out-of-court statement could be admitted so long as it had adequate indicia of reliability—i.e., it fell within a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness. *Id.* at 66, 100 S.Ct. 2531. In *Crawford,* the Supreme Court overruled *Roberts* and specified that "testimonial" hearsay evidence is inadmissible under the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford,* 124 S.Ct. at 1374. The Court declined, however, to provide a comprehensive definition of testimonial evidence. *Id.* The instant case involves the out-of-court statement of Pham, made before Pham was taken formally into custody. Thus, we must examine whether this statement falls within the guidelines provided by the Supreme Court for determining what statements are testimonial.

■ In *Crawford,* the Supreme Court listed several non-exclusive examples of testimonial statements as follows: (1) ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extra-judicial statements contained in formalized testimonial materials, such as depositions, prior testimony, or confessions; and (3) statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial. *Id.* at 1364. Even under a narrow standard, ex parte testimony at a preliminary hearing or statements taken by police officers in the course of interrogations are also testimonial. *Id.* Pham's

statement at the roadside stop was given in response to police questioning relating to the money laundering for which appellant had already been arrested. The State contends that the statement did not result from an "interrogation," as contemplated by *Crawford,* because Pham was not in custody, at the "jailhouse," or "sitting down to give a statement after being given *Miranda* warnings." We decline to adopt such a narrow interpretation.

*Crawford* made clear that it used the term "interrogation" in its colloquial, rather than any technical legal sense. *Id.* at 1365 n. 4 (comparing colloquial definitions of interrogation with technical definition applied in *Miranda* cases). "Colloquial" means "used in or characteristic of conversation, especially familiar and informal conversation." WEBSTER'S THIRD NEW INT'L DICTIONARY 446 (1981). Police interrogation in the colloquial sense undoubtedly includes this question by the officer asking if the money was obtained from the illegal sale of drugs.

The State also argues that the setting lacked the formality of the testimonial statements described in *Crawford.* However, we note that the officers' questioning was recorded on the audio-video equipment of the patrol car. Although the statement in question was not audible on the recording, that does not alter the formality of the setting that was intended to record testimony for the prosecution of the case being investigated.

We recently held that the written custodial statement of a codefendant made to police after his arrest was testimonial. *Brooks v. State,* 132 S.W.3d 702 (Tex.App.-Dallas 2004, pet. filed). Today we conclude that the out-of-court statement of Pham, made in response to the questions of the officer during the roadside stop after appellant had been arrested, is also testimonial. Its admission violated appel-

lant's Sixth Amendment right of confrontation.

## HARM ANALYSIS

 We now turn to the question of whether appellant was harmed by the error. In the case of constitutional error, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction. *See* TEX.R.APP. P. 44.2(a); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Brooks*, 132 S.W.3d at 707–08. If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000); *Brooks*, 132 S.W.3d at 708.

Appellant called two witnesses who testified he had cash available in an amount between $246,000 to $250,000 at the time of his trip. This was well in excess of the $190,000 cash in his possession at the time of arrest. These witnesses also testified appellant had property and credit sufficient to account for this amount of cash and that appellant was Vietnamese with a cultural background of relying on cash transactions. At the scene, appellant had stated to the arresting officers that the money belonged to him. Without the Pham's statement about the source of the money, the State had to rely on weak circumstantial evidence to controvert appellant's claim of legal ownership. In its summation to the jury, the State itself argued that its "most damning evidence" was Pham's statement. Accordingly, we conclude there is a reasonable likelihood that admitting the statement materially affected the jury's deliberations. Because we are unable to say that the error in admitting Pham's statement in violation of the Confrontation Clause was harmless beyond a reasonable doubt, we sustain appellant's second issue.

## CONCLUSION

Having concluded that the admission of the out-of-court statement was harmful error, we reverse the conviction and remand for further proceedings. Our disposition of these issues makes it unnecessary to address appellant's remaining complaints. *See* TEX.R.APP. P. 47.1.