In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00148-CR
______________________________


TAVARES LATRA MOORE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31777-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Approximately one hour after responding to a report of domestic violence at the home of
Kimberly Fifita and Tavares Latra Moore, police questioned Fifita and her nine-year-old son on
videotape. In response to police questions, Fifita stated that Moore had assaulted her, by choking
her, hitting her with a chair, and slamming her against a wall.


 Fifita's son offered a few
corroborating answers on the videotape. Although Fifita had been subpoenaed by the State to testify
at Moore's resulting trial for assault,


 she did not appear in time to be examined in person.


 Her son
also did not testify. The videotape was admitted over Moore's objection.



            In two points of error, Moore contends that the introduction of the videotape was harmful
error and that his motion for directed verdict should have been granted. We reverse his conviction
and remand for a new trial because we hold (1) admitting the videotape was harmful error, and
(2) denying Moore's motion for directed verdict was proper.
 
 
 
(1) Admitting the Videotape Was Harmful Error
            In his first point of error, Moore argues that admitting the videotape violated the
Confrontation Clause of the United States Constitution.


 The State argues the videotape contained
only excited utterances, all excited utterances are nontestimonial, and therefore this statement was
properly admitted. We sustain Moore's first point of error because
            (a)       after Crawford,


 the Confrontation Clause requires exclusion of testimonial
statements unless there has been a prior opportunity for cross-examination;
            (b)       "testimonial" statements include at least prior testimony, police interrogations, and
the like;
            (c)       an excited utterance is not necessarily nontestimonial;
            (d)       the videotape was testimonial and therefore was erroneously admitted; and
            (e)       admitting the videotape was harmful.
We examine each of those logical steps in that order.
 
            (a)       After Crawford, the Confrontation Clause Requires Exclusion of Testimonial
Statements Unless There Has Been a Prior Opportunity for Cross-Examination

            The Sixth Amendment provides, "in all criminal prosecutions, the accused shall enjoy the
right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth
Amendment's right of confrontation is a fundamental right and is applicable to the States by virtue
of the Fourteenth Amendment." Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991);
McClenton v. State, No. 10-03-00099-CR, 2005 Tex. App. LEXIS 3086, at *7 (Tex. App.—Waco
Apr. 20, 2005, no pet.).
            Until recently, the application of the Confrontation Clause to an out-of-court statement was
governed by Ohio v. Roberts, 448 U.S. 56 (1980), overruled in part, Crawford, 541 U.S. 36.


 Under
Roberts, the statement of an unavailable witness was admissible if it had sufficient "indicia of
reliability." Roberts, 448 U.S. at 66. Reliability could be inferred if the evidence fell within a firmly
rooted hearsay exception. Id.
            In Crawford, the United States Supreme Court set out a new test for challenges to out-of-court statements based on the Confrontation Clause. Crawford held that the Confrontation Clause
was a procedural guarantee which commands that "reliability be assessed in a particular manner: 
by testing in the crucible of cross-examination." Crawford, 541 U.S. at 61.


 The Court held that,
"where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law
required: unavailability [of the witness] and a prior opportunity for cross-examination." Id. at 68. 
Crawford reasoned that the Confrontation Clause was intended to prevent the historic practice of
using ex parte examinations as evidence against the accused. Id. The Court rejected the view that
the Confrontation Clause applies only to in-court testimony and that the introduction of out-of-court
testimonial statements depended on the laws of evidence. Id. at 61. The Court determined that the
framers of the Constitution would not have allowed admission of testimonial statements of a witness
who did not appear at trial unless he or she was unavailable to testify and the defendant had a prior
opportunity for cross-examination. Id. at 68.












 
            (b)       "Testimonial" Statements Include at Least Prior Testimony, Police Interrogations,
and the Like
            Though Crawford does not definitively define "testimonial,"


 it does give some suggestions
as to its meaning. The Court held that a statement, which was "knowingly given in response to
structured police questioning," was testimonial. Id. at 53 n.4. The Court noted:
"Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the
purpose of establishing or proving some fact." 1 N. Webster, An American
Dictionary of the English Language (1828). An accuser who makes a formal
statement to government officers bears testimony in a sense that a person who makes
a casual remark to an acquaintance does not. The constitutional text, like the history
underlying the common-law right of confrontation, thus reflects an especially acute
concern with a specific type of out-of-court statement.

Id. at 51. Testimonial statements are not limited to statements given under oath. See id. at 52. In
addition, the Court noted several proposed definitions for testimonial:
Various formulations of this core class of "testimonial" statements exist: "ex parte
in-court testimony or its functional equivalent--that is, material such as affidavits,
custodial examinations, prior testimony that the defendant was unable to
cross-examine, or similar pretrial statements that declarants would reasonably expect
to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements . . . 
contained in formalized testimonial materials, such as affidavits, depositions, prior
testimony, or confessions," White v. Illinois, 502 U.S. 346, 365, 116 L.Ed.2d 848,
112 S.Ct. 736 (1992) (Thomas, J., joined by Scalia, J., concurring in part and
concurring in judgment); "statements that were made under circumstances which
would lead an objective witness reasonably to believe that the statement would be
available for use at a later trial," Brief for National Association of Criminal Defense
Lawyers et al. as Amici Curiae 3.
Crawford, 541 U.S. at 51–52. The first two proposed formulations relate to the formal nature of the
interaction during which the statement was made. They focus on the formal quality of the statement
and its similarity to ex parte in-court testimony. The third proposed formulation focuses on the
reasonable expectations of an objective witness.
            Yet the Court refused to adopt any of the proposed formulations as a core class of
"testimonial" statements. The Court noted that the term "testimonial" includes at a minimum "prior
testimony at a preliminary hearing, before a grand jury, or at a former trial" and to "police
interrogations." Id. at 68. In determining whether a statement is "testimonial," courts have examined
the formal nature of the interaction, the intent of the declarant, or some combination of the two
factors. We will examine each of these factors in turn.
            Formality. The text of Crawford focuses extensively on the formal nature or quality of the
interaction. The Court held "the principal evil at which the Confrontation Clause was directed was
the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as
evidence against the accused." Id. at 50. The Court analyzed at length historical ex parte
examination practices and the original intent of the Confrontation Clause. As the Court emphasized,
the Confrontation Clause "is a procedural rather than a substantive guarantee." Id. at 61. Thus, if
the nature of the interaction possesses a sufficiently formal quality such that it is the functional
equivalent of ex parte in-court testimony, the statement is testimonial.
            Some other courts have focused on the formal nature of the interaction. See Lee v. State, 143
S.W.3d 565, 570 (Tex. App.—Dallas 2004, pet. ref'd); see also Ruth v. State, No. 14-03-01158-CR,
2005 Tex. App. LEXIS 4729, at *16–17 (Tex. App.—Houston [14th Dist.] June 21, 2005, no pet.
h.) (not designated for publication) (whether statement is testimonial turns on procedure used to
obtain it, not its contents). In Lee, the Dallas Court of Appeals held that an out-of-court statement
of a codefendant made during a roadside stop, after he had been arrested and in response to questions
of an officer, was testimonial. See Lee, 143 S.W.3d at 570. The court stated, "Although the
statement in question was not audible on the recording, that does not alter the formality of the setting
that was intended to record testimony for the prosecution of the case being investigated." Id. The
State argues the Dallas Court of Appeals erred in focusing on the intent of the police officer in
recording the statement. We disagree that the Dallas Court of Appeals erred in focusing on the intent
of the police officer. The intent of the police officer is relevant because it is a strong indication that
the interaction was the functional equivalent of a police interrogation. See id. Though the Lee
interview may have lacked some of the formality of the interrogation addressed in Crawford, the
Dallas Court of Appeals apparently concluded that formality in an interaction could be sufficiently
similar to a formal police interrogation to make the statement testimonial.
            The Indiana Court of Appeals has held that whether a statement is testimonial revolved
around the official and formal quality of the statement. See Fowler, 809 N.E.2d at 963.
            Declarant's Intent. Another approach of determining whether a statement is testimonial
involves examining the intent of the declarant. The intent could be examined from either an
objective or subjective point of view. While the proposed formulation noted by the Supreme Court
views the intent of the declarant from an objective perspective, i.e., whether an objective witness
would reasonably believe that the statement would be available for use at a later trial; the intent
could also be examined from the subjective view of the declarant. While the Supreme Court in
Crawford did not specifically adopt the subjective intent of the declarant in defining testimonial, it
held that a statement "knowingly given in response to structured police questioning" was testimonial
under any conceivable definition of interrogation. Crawford, 541 U.S. at 53. This statement
indicates that the subjective intent of the declarant may be relevant in determining if a statement is
testimonial. This Court has held that co-conspirator statements made to another co-conspirator
"were not made in a setting where it might reasonably be expected the statements would be used in
judicial proceedings." See Wiggins, 152 S.W.3d at 659; cf. Woods v. State, 152 S.W.3d 105, 114
(Tex. Crim. App. 2004) (casual remarks spontaneously made to acquaintances are nontestimonial).
            Some courts have indicated that the subjective intent of the declarant is also relevant. Key
v. State, No. 12-04-00030-CR, 2005 Tex. App. LEXIS 1573, at *13 (Tex. App.—Tyler Feb. 28,
2005, no pet.); Fowler, 809 N.E.2d at 965. See Chris Hutton, Sir Walter Raleigh Revived: The
Supreme Court Revamps Two Decades of Confrontation Clause Precedent in Crawford v.
Washington, 50 S.D. L. Rev. 41, 58 (suggesting "testimonial" includes both objective and subjective
aspects).
            Hybrid Formulations. Alternatively, "testimonial" could encompass some aspects of both
the formal nature of the interaction and intent of the declarant formulations. As discussed below,
we believe that Fifita's statement qualifies as testimonial under either formulation. Therefore, we
decline to determine whether "testimonial" refers to the formal nature of the interaction, the intent
of the declarant, or some combination of the two approaches at this time.
            (c)       An Excited Utterance Is Not Necessarily Nontestimonial
            The State argues that, as a class, excited utterances are not testimonial. It argues that excited
utterances are not generally made in formal settings, for the purpose of preparing a criminal case for
prosecution, and are frequently collected at the scene of the crime. The State further argues that an
excited utterance cannot be testimonial since the declarant is dominated by the emotions, excitement,
fear, or pain of the exciting event.
            In support of its argument, the State cites Fowler, 809 N.E.2d 960; Hammon v. State, 809
N.E.2d 945 (Ind. Ct. App. 2004), trans. granted; People v. Cage, 15 Cal. Rptr. 3d 846 (Cal. Ct. App.
2004), review granted and superseded, 99 P.3d 2 (Cal. 2004). The Indiana Court of Appeals stated:
We further note that the very concept of an "excited utterance" is such that it is
difficult to perceive how such a statement could ever be "testimonial." "The
underlying rationale of the excited utterance exception is that such a declaration from
one who has recently suffered an overpowering experience is likely to be truthful."
Hardiman v. State, 726 N.E.2d 1201, 1204 (Ind. 2000). To be admissible, an excited
utterance "must be unrehearsed and made while still under the stress of excitement
from the startling event." Id. "The heart of the inquiry is whether the declarants had
the time for reflection and deliberation." Id. An unrehearsed statement made without
reflection or deliberation, as required to be an "excited utterance," is not "testimonial"
in that such a statement, by definition, has not been made in contemplation of its use
in a future trial. See Crawford, ___ U.S. at ___, 124 S. Ct. at 1364 . . . .

Hammon, 809 N.E.2d at 952–53; see Fowler, 809 N.E.2d at 964. We note that, in Fowler, the court
also based its decision on its conclusion that the questioning did not constitute a classic "police
interrogation." Fowler, 809 N.E.2d at 964. 
            At least one Texas court of appeals appears to have been persuaded by the reasoning of the
Indiana Court of Appeals. The Tyler Court of Appeals has stated "we are persuaded that the
underlying rationale of an excited utterance supports a determination that it is not testimonial in
nature." Key, 2005 Tex. App. LEXIS 1573, at *13. In making this determination, the Tyler Court
of Appeals considered whether the statements were made with the reasonable expectation that they
would be used in court. Id. at *12. Because an excited utterance is made by a declarant who has not
had time for reflection or deliberation, the court reasoned that the declarant of such a statement did
not contemplate its use at a future trial. Id. at *13.
            The Fourteenth District Court of Appeals has recently rejected the notion that all excited
utterances are nontestimonial. Spencer v. State, 162 S.W.3d 877, at *9–12 (Tex. App.—Houston
[14th Dist.] 2005, no pet.). Although the court held that a declarant's state of excitement can be
considered when determining whether his or her statement is testimonial, the Fourteenth District
refused to establish a bright-line rule that excited utterances can never be testimonial. Id. at *12. 
In addition, the Austin Court of Appeals has stated that the determination of whether a statement is
testimonial does not turn on whether it qualifies under a hearsay exception. See Davis v. State, No.
03-04-00014-CR, 2005 Tex. App. LEXIS 3773, at *20–29 (Tex. App.—Austin May 19, 2005, no
pet.) (extensive analysis concluding excited utterances are not necessarily nontestimonial); see also
Scott v. State, No. 03-03-00109-CR, 2005 Tex. App. LEXIS 2168, at *49 (Tex. App.—Austin Mar.
24, 2005, no pet.) (whether statement is testimonial does not turn on whether it qualifies as self-inculpatory within meaning of hearsay exception). We agree with the reasoning of the Austin Court
of Appeals and the Fourteenth District Court of Appeals. Each statement must be analyzed
individually independent of whether it is an excited utterance under the Texas Rules of Evidence.
            The Crawford decision specifically excludes a statement's exemption based on the Rules of
Evidence. While the Supreme Court noted that "not all hearsay implicates the Sixth Amendment's
core concerns," it also opined that "leaving the regulation of the confrontation out-of-court
statements to the law of evidence would render the Confrontation Clause powerless to prevent even
the most flagrant inquisitorial practices." Crawford, 541 U.S. at 51. If we held that all excited
utterances were nontestimonial, we would be leaving the regulation of the Confrontation Clause to
the Rules of Evidence, which is specifically prohibited by Crawford.


 The mere fact that a
statement may be an excited utterance does not satisfy the Confrontation Clause concerns espoused
in Crawford. Under Crawford, whether the introduction of a statement violates the Confrontation
Clause is entirely independent of the Texas Rules of Evidence. "The threshold question imposed by
Crawford is whether the proffered out-of-court statement is 'testimonial' in nature." Brooks v. State,
132 S.W.3d 702, 707 (Tex. App.—Dallas 2004, pet. ref'd); see Crawford, 541 U.S. at 36. While
many excited utterances will be nontestimonial, we are unwilling to conclude that a statement is not
testimonial simply because it is an excited utterance.
 
            (d)       The Videotape Was Testimonial and Therefore Was Erroneously Admitted
            Whether the right of confrontation has been violated should be reviewed de novo.


 We note
that the State argues that this appeal involves an evidentiary ruling, which is reviewed for an abuse
of discretion. The State cites Wilson in urging us to review the trial court's ruling for an abuse of
discretion. Wilson, 151 S.W.3d at 699. But Wilson held that the standard for reviewing a potential
Confrontation Clause violation was de novo. Id. at 697. Only after the statements had been
determined to be nontestimonial did the court review the admission of the statement under an abuse
of discretion standard. Id. at 699. We will review the trial court's determination that the statement
is nontestimonial de novo.
            Under the circumstances of this case, Fifita's statement, that was recorded on videotape, is
testimonial. At the time the statement was made, Moore had reported to the police that Fifita had
assaulted him. The police officer informed Fifita of her Miranda rights before the interview, and
the statements of Fifita and her son were made in response to questioning by the police officer. At
trial, the State used the resulting videotape as the functional equivalent of in-court testimony.
            The formal nature of the interaction indicates that the statement is testimonial. Although the
interview was conducted at Fifita's residence, the videotaped interview is, or is similar to, a police
interrogation. The Supreme Court explicitly held that "statements taken by police officers in the
course of interrogations" are clearly testimonial. Crawford, 541 U.S. at 68. Crawford asserted that
it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." Id. at 53 n.4.
"Colloquial" means "used in or characteristic of familiar and informal conversation." Merriam
Webster's Collegiate Dictionary (10th ed. 1993). Even if the interview was not a police
interrogation in the technical legal sense, it qualifies in the colloquial sense. Moore had been
previously interviewed after he reported to the police that Fifita had assaulted him. Fifita was read
her rights and asked several questions concerning the events of that morning. She was aware that
she was being videotaped and that evidence was being collected. Even though the interview was not
as formal as many police interrogations, the purpose of the interview was the same as a typical police
interrogation—to record testimony for the prosecution of the offense being investigated. The
formality of the videotaped statement greatly favors a finding of the statement being testimonial.
            Further, both the subjective intent of the declarant and the reasonable expectations of an
objective witness indicate that the statement is testimonial. Fifita understood that the statement
could be used to investigate or prosecute the offense and was conscious that she was bearing witness. 
The State argues that an excited utterance cannot be given solemnly or with the purpose of
establishing a fact in court. We disagree. Even if a declarant is still under the influence of the
traumatic event and has not had sufficient time to reflect on the incident, the declarant can still
understand, under certain circumstances, that the statement will be used for prosecution. In this case,
Fifita stated that she understood her Miranda rights. Fifita clearly understood that the videotape was
being taken to preserve evidence for later use. Further, an objective witness could reasonably expect
the videotaped statement to be available for use at a trial.
            Texas cases have held that statements similar to the statement at issue were testimonial.


 
Both the formal nature of the interaction and the intent of the declarant indicate that the statement
was testimonial. We conclude Fifita's recorded out-of-court statement made in response to the
questioning of the police officer, especially after she had been warned of her rights under Miranda,
are testimonial.
            In addition, we believe the brief statement given by Fifita's son is testimonial as well. While
Fifita was being interviewed on the videotape, Fifita called her son in from an adjoining room at the
police officer's request. Fifita's son stated that he saw Moore grab his mother around the neck,
appear to choke her, and throw her against the wall. While the officer did not read the son his rights,
the police officer did introduce himself and inform the son that he was investigating the "incident"
which occurred that morning. The formal nature of the statement indicates it was testimonial. The
interview was the functional equivalent of in-court testimony. The son was aware that he was being
videotaped and that evidence was being collected. The purpose of the interview was to memorialize
the evidence and preserve it for trial. Further, an objective witness would reasonably believe that
the statement would be available for use later at trial. The police officer informed the son that he
was investigating the "incident," and the son could observe the statement was being videotaped. 
Both the formal nature of the interaction and the intent of the declarant indicate that the statement
was testimonial. We conclude Fifita's son's recorded, out-of-court statement made in response to the
questioning of the police officer, after being informed the officer was investigating "the incident,"
was testimonial. Therefore, admitting the videotape was error.
            (e)       Admitting the Videotape Was Harmful
            When a defendant's rights under the Confrontation Clause are violated, we must reverse the
trial court's judgment due to constitutional error unless it is determined beyond a reasonable doubt
that the error did not contribute to the appellant's conviction. Tex. R. App. P. 44.2(a); McClenton,
2005 Tex. App. LEXIS 3086, at *15–16; Wall, 143 S.W.3d at 851.
            In determining if the error contributed to the appellant's conviction, we apply the factors
enunciated by the Supreme Court in Delaware v. Van Arsdall. McClenton, 2005 Tex. App. LEXIS
3086  at  *16;  see  Delaware  v.  Van  Arsdall,  475  U.S.  673,  686–87  (1986).  These  factors
include  (1)  the  importance  of  the  witness'  testimony,  (2)  whether  the  testimony  was
cumulative, (3) the presence or absence of evidence corroborating or contradicting the witness'
testimony, (4) the extent cross-examination was permitted, and (5) the overall strength of the State's
case. McClenton, 2005 Tex. App. LEXIS 3086, at *16; see Van Arsdall, 475 U.S. at 684. If, after
considering the above factors, we cannot conclude beyond a reasonable doubt that the error did not
contribute to the appellant's conviction, we must reverse the trial court's judgment. McClenton, 2005
Tex. App. LEXIS 3086, at *16. Our inquiry focuses on whether the complained-of error contributed
to the jury's verdict—regardless of the sufficiency of the legally admitted evidence. Id.; Bratton v.
State, 156 S.W.3d 689, 693 (Tex. App.—Dallas 2005, no pet.).
            The Van Arsdall factors indicate that the error did contribute to Moore's conviction. The
videotape was not merely cumulative of other testimony and was of great importance. The videotape
contained the only direct evidence that Moore assaulted Fifita. Moore had no opportunity for cross-examination. Further, the State's case was weak without the videotape. While Fifita's injuries did
partially corroborate the statement, the corroboration is insufficient to conclude beyond a reasonable
doubt that the error in admitting the videotape did not contribute to the conviction.



            We sustain Moore's first point of error.



(2) Denying Moore's Motion for Directed Verdict Was Proper
            In his second point of error, Moore alleges the trial court erred in denying his motion for a
directed verdict. A point of error complaining about a trial court's failure to grant a motion for
directed verdict is a challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996); Smith v. State, 109 S.W.3d 80, 81 (Tex. App.—Texarkana 2003,
no pet.). In our review of the legal sufficiency of the evidence, we employ the standards set forth
in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This requires us to view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999); Glover v. State, 102 S.W.3d 754, 759 (Tex. App.—Texarkana 2002, pet.
ref'd).
            Blackburn testified to some of what Fifita told him the morning of the assault, but he did not
recount any allegation from Fifita that Moore assaulted her. Further, we are required to consider the
videotape as part of the evidence for this review, even though it should not have been admitted. 
Even erroneously admitted evidence must be considered when addressing a challenge to the
sufficiency of the evidence. Glover, 102 S.W.3d at 759. Both Fifita and her son describe on the
videotape the assault and identify Moore as the person who committed the assault. In addition, the
videotape reveals Fifita's injuries. Because we are to consider even erroneously admitted evidence
in determining if the evidence is sufficient, the evidence is legally sufficient. The trial court did not
err in denying the motion for directed verdict. We overrule Moore's second point of error.
            We reverse the judgment of the trial court and remand this case for a new trial.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 24, 2005
Date Decided:             July 26, 2005

Publish