Reversed and Remanded and Opinion filed November 29, 2005









Reversed and Remanded and Opinion filed November 29,
2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00757-CR

____________

 

SAMUEL RICHMOND
WALKER,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 943,669

 



 

O P I N I O N

Appellant Samuel Richmond Walker appeals
his conviction for aggravated robbery.[1]  In his first nine points of error, appellant
alleges that certain testimony by Detective Michael Parinello was hearsay and
also violated his Sixth Amendment right to confrontation and
cross-examination.  In his last two
points of error, appellant alleges that the evidence is legally and factually
insufficient to support his conviction. 
We reverse and remand.

 








Background

On June 15, 2002, complainant Matilde
Delgato was robbed at gunpoint in a Wal-Mart parking lot.  Delgato was sitting in her car with her three
sons when a man approached, put a gun to her chest, and ordered her to give him
her purse or he would kill her.   Delgato, who does not speak English, asked her
thirteen-year-old son Eric to translate for her.  Eric, who was sitting in the front passenger
seat, told Delgato to give the man her purse, which she did.  The purse contained credit cards, checks,
jewelry, and the family=s identification documents.  The robber left the scene in a small red car
driven by a woman.  

Two days later, Officer Kathy Richards
arrested Dedra Dangerfield for public intoxication.  In Dangerfield=s purse were
Delgato=s identification
documents and other stolen property. 
Richards then contacted Detective Michael Parinello, who was
investigating the robbery.  Parinello
interviewed Dangerfield in jail and learned the nicknames of two potential
suspects: APocahontas@ and ALow Down.@  Parinello then learned from a data bank that
Pocahontas and Low Down were the nicknames of Noralva Ramos and appellant
Samuel Richmond Walker.

Two weeks after the robbery, Parinello
assembled photo spreads containing photos of Dangerfield, Ramos, and appellant
and showed them to Delgato and Eric. 
Delgato could not identify anyone in the photo spreads; however, Eric
picked appellant out of the photo spread and also identified him in court as
the man who had robbed them.  At trial,
Parinello testified that he had also shown the photo spreads to Dangerfield,
who identified Ramos as the person she knew as Pocahontas and appellant as the
person she knew as Low Down. Dangerfield did not testify at trial.

Delgato testified that the robbery lasted
about twenty seconds.  She also admitted
that she had not seen the perpetrator approach her car and that she did not get
a good look at his face.  Delgato also
testified that she saw only the tip of a black gun because the robber had
draped a jacket or sweatshirt over his arm and most of the gun.  








Eric testified that the robbery lasted
between one and two minutes, although security tapes indicated that the
encounter was less than a minute.  Eric
also testified that he clearly saw the 
perpetrator=s face even though the man was wearing a
hood.  He stated that he saw only a
couple inches of a black gun because the man=s sleeve hid the
rest of the weapon and because he had been concentrating more on the man=s face.  Eric also testified that he had seen the red
car drive around the parking lot for several minutes before the robbery
occurred.[2]

Legal and Factual Sufficiency

We first consider appellant=s arguments that
the evidence is legally and factually insufficient to support his
conviction.  In evaluating the legal sufficiency
of the evidence, we must view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002).  This standard of
review applies to cases involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we
consider all evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the jury. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony, and it
is the exclusive province of the jury to reconcile conflicts in the
evidence.   Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000).








In a factual sufficiency review, we must view all the
evidence in a neutral light and determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  Evidence is
factually insufficient if, when considered by itself, the evidence supporting
the verdict is too weak to support a finding of guilt beyond a reasonable doubt
and thus renders the conviction clearly wrong and manifestly unjust.  Id. at 85; Vasquez , 67 S.W.3d
at 236.  Alternatively, evidence is
factually insufficient if the evidence contrary to the verdict is strong enough
that the beyond-a-reasonable-doubt standard cannot be met, even if evidence
supporting guilt outweighs the evidence to the contrary.  Zuniga, 144 S.W.3d at 484.  Again, the reviewing court may not
substitute its own judgment for that of the jury and may not intrude upon the
jury=s role as the sole
judge of the weight and credibility of witness testimony.  Vasquez, 67 S.W.3d at 236.

Viewing the evidence in the light most favorable to the
verdict, we find that the evidence is legally sufficient to support appellant=s conviction beyond a reasonable
doubt.  To obtain a conviction for
aggravated robbery, the state needed to prove that (1) appellant unlawfully
appropriated Delgato=s property with the intent to deprive her of it; (2)
appellant  intended to obtain or maintain
control of Delgato=s property; and (3) appellant used or exhibited a deadly
weapon.  Tex. Pen. Code Ann. '' 29.02, 29.03, 31.03 (Vernon 2003).
The robber=s identity was the only point of
contention in this case.  

At trial, Eric Delgato testified that he had studied the
robber=s face and had seen it clearly.  He also identified appellant in a photo array
and in court as the man who held a gun to his mother=s chest.  Eric=s identification is legally
sufficient because a conviction may be based on the testimony of only one
eyewitness.  Aguilar v. State, 468
S.W.2d 75, 77 (Tex. Crim. App. 1971). 
Additionally, Parinello=s testimony that Dangerfield identified appellant as the man
she knew as Low Down linked appellant to the crime because Delgato=s belongings were found in
Dangerfield=s possession.[3]  Thus, viewing the evidence in the light most
favorable to the verdict, we find that the evidence is legally sufficient to
support appellant=s conviction for aggravated robbery.








Viewing the evidence in a neutral light, we also find that a
jury rationally could have found appellant guilty of aggravated robbery beyond
a reasonable doubt.  Even though Delgato
was unable to identity appellant, Eric identified him in both the photo spread
and in open court.  Although defense
counsel attempted to impeach Eric by emphasizing that the robbery had lasted
only a few seconds, that the perpetrator had been wearing a hood, and that Eric
was only thirteen at the time, the jury is the sole judge of a witness=s credibility, and it apparently
found Eric to be credible.  Furthermore,
Dangerfield had Delgato=s stolen property in her possession and identified appellant
as Low Down; these facts suggest that appellant was involved in the
robbery.  Thus, viewing the evidence in a
neutral light, we find that the evidence is factually sufficient to support
appellant=s conviction.

Right to Confrontation

In his sixth and eighth points of error, appellant argues
that the trial court violated his federal right to confrontation and
cross-examination by allowing Parinello to testify that Dangerfield identified
photographs of Ramos and appellant.  We
agree.

In Crawford v. Washington, the United States Supreme
Court held that the admission of incriminating testimonial out-of-court
statements violates a defendant=s Sixth Amendment right to confrontation and
cross-examination when the defendant has had no opportunity to cross-examine
the declarant. 541 U.S. 36, 68-69 (2004). 
Although the Court declined to provide a comprehensive definition of Atestimonial,@ it explained that a statement is
testimonial if it was Amade under circumstances which would lead an objective
[declarant] reasonably to believe that the statement would be available for use
at a later trial.@  Id. at
52.  The Court also specified that the
term Atestimonial@ includes statements taken by police
officers during interrogations and noted that it was using the term Ainterrogation@ in a colloquial rather than a
technical legal sense.  Id. at 52,
53 n.4, 68.  To illustrate this point,
the Court asserted that the declarant=s recorded statement, Aknowingly given in response to
structured police questioning,@ qualified as testimonial under any conceivable definition of
Ainterrogation.@ 
Id. at 53 n.4. 








In determining whether statements are testimonial, Texas courts
generally have looked to the degree of formality of a declarant=s interaction with
police, the purpose and structure of police questioning, and the likelihood
that the declarant expects that the statements could be used in a criminal
prosecution.  See, e.g.,
Tyler v. State, 167 S.W.3d 550, 555 (Tex. App.CHouston [14th
Dist.] 2005, pet. filed) (holding that victim=s explanation of
what had transpired was nontestimonial because it merely aided the start of the
investigation and the officer did not ask questions); see also Wilson v.
State, 151 S.W.3d 694, 698 (Tex. App.CFort Worth 2004,
no pet.) (holding that statements were nontestimonial because there was no
interrogation when witness initiated contact with police and the purpose of
officers= questions was not
to elicit information about known criminal activity); Gutierrez v. State,
150 S.W.3d 827, 830 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (holding that accomplice=s videotaped
statement to police after defendant=s arrest was
testimonial); Lee v. State, 143 S.W.3d 565, 570-71 (Tex. App.CDallas 2004, pet.
ref=d) (holding that
statement was testimonial because circumstances were sufficiently formal when
declarant made the statement during a traffic stop in response to police
questioning and the statement was video-taped); Brooks v. State, 132
S.W.3d 702, 707 (Tex. App.CDallas 2004, pet.
ref=d) (holding that
co-defendant=s written custodial statement made during
investigation of charged offense was testimonial).  This precedent suggests that testimonial
statements Ainvolve a declarant=s knowing
responses to structured questioning in an investigative environment or a
courtroom setting where the declarant would reasonably expect that his or her
responses might be used in future judicial proceedings,@ and that the
procedure used to procure the statement determines whether the statement is
testimonial.   Tyler, 167 S.W.3d
at 553 (citing Scott v. State, 165 S.W.3d 27, 46 (Tex. App.CAustin 2005, pet.
stricken)); Wiggins v. State, 152 S.W.3d 656, 659 (Tex. App.CTexarkana 2004,
pet. ref=d) (citing United
States v. Saget, 377 F.3d 223, 228 (2nd Cir. 2004)).








We find that Dangerfield=s identifications
of Ramos and appellant qualify as testimonial statements.  Parinello approached Dangerfield while she
was in police custody to question her about an ongoing criminal investigation
and asked her to identify suspects in that investigation.  These facts demonstrate that the setting was
sufficiently formal and structured to qualify as a police interrogation.  Additionally, under these circumstances,
Dangerfield reasonably could have believed that her identifications would be
used in the subsequent trials of Ramos and appellant.  Therefore, we find that the admission of
Dangerfield=s incriminating out-of-court testimonial
statements violated appellant=s Sixth Amendment
rights. 

The State argues that the confrontation
issue is not preserved for appeal because defense counsel failed to object and
obtain a ruling after each question.  We
disagree.  To preserve constitutional
error, counsel must timely and specifically object to the complained-of
testimony; a defendant waives his right to confront witnesses if defense
counsel does not object on confrontation grounds at trial.  See Tex.
R. App. P. 33.1(a); Oveal v. State, 164 S.W.3d 735, 739 (Tex.
App.CHouston [14th
Dist.] 2005, pet. ref=d); Bunton v. State, 136 S.W.3d
355, 369 (Tex. App.CAustin 2004, pet. ref=d) (holding that
appellant waived Confrontation Clause complaint by failing to object at trial
and rejecting argument that because Crawford established a new
constitutional principle, an objection would have been futile).  

We find that appellant=s defense counsel
preserved the confrontation issue by making adequate objections at trial.  We quote briefly from the State=s direct
examination of Parinello to illustrate this point:

[Prosecutor]:  In connection with the photo spread
containing Pocahontas also known as Noralva Ramos, did Dedra Dangerfield make
an identification as to who she knew to be that person?

[Defense Counsel]:  Same objection, Judge.  Nontestifying witness, out of court hearsay,
and confrontational (emphasis added).[4]

The Court: Overruled.

[Parinello]:  Yes, she did.

[Prosecutor]:  And who did she identify?

[Defense Counsel]:  Same objection (emphasis added).








[Parinello]:  She identified the photograph in the Number 4
position as Noralva Ramos.        

[Prosecutor]:  In connection with State=s Exhibit 2, the photo spread
containing Samuel Richmond Walker, did you show that photo spread to her as
well?

[Parinello]:  Yes.

[Prosecutor]:  Was Dedra Dangerfield able to identify anyone
in that photo spread?       

[Defense Counsel]:  Same objection again, Judge (emphasis
added).

The Court:  That will be overruled.

[Parinello]:  Yes.

[Prosecutor]:  What was her identification?

[Parinello]:  She identified the person in Number 6 as the
person she knew as Low Down.

Clearly, defense counsel made three
objections on confrontation grounds, two of which were overruled.[5]  Although counsel did not object after every
question and failed to obtain a ruling after one objection, to do so likely
would have frustrated both the judge and the jury, and also may not have been
possible before Parinello answered the prosecutor=s questions.  The record indicates that counsel
persistently objected to questions regarding Dangerfield=s identification
of both Ramos and appellant; therefore, we find that the confrontation issue
was preserved for appeal.

The State also contends that any error by the trial court was
harmless.  According to the State,
Parinello=s testimony regarding Dangerfield=s identification of Pocahontas as
Ramos was Acompletely irrelevant@ to appellant=s conviction.  Furthermore, the State claims that the only
significant facts proved by the challenged testimony were that appellant was
known as ALow Down@ and that Dangerfield knew him as
such.  We disagree.  








We evaluate harm in this case under the constitutional
standard.  When conducting a harmless
error review, an appellate court must reverse a judgment of conviction unless
it determines beyond a reasonable doubt that the error did not contribute to
the conviction.  Tex. R. App. P. 44.2(a). 
The reviewing court should be concerned with the integrity of the
process leading to the conviction and should examine the source of the error,
the nature of the error, whether or to what extent it was emphasized by the
State, and its probable collateral implications.  Harris v. State, 790 S.W.2d 568, 587
(Tex. Crim. App. 1989).  Essentially, the
reviewing court should ask whether the jurors were able to properly apply law
to facts in order to reach a verdict.  Id.  If the error was of a magnitude that it
disrupted the jury=s orderly evaluation of the evidence, then the conviction is
tainted.  Id. at 588.

We cannot determine beyond a reasonable doubt that the
challenged testimony did not contribute to appellant=s conviction.  Although Parinello avoided stating explicitly
that Dangerfield had received Delgato=s stolen property from either Ramos
or appellant, Dangerfield=s identifications of Ramos and appellant as Pocahontas and
Low Down implicitly link appellant to the crime.  The record reveals that Eric Delgato
identified appellant as the perpetrator, that a woman drove the red get-away
car, and that Dangerfield possessed Delgato=s property two days after the
robbery; in the context of this evidence, Dangerfield=s identifications suggest that
Ramos/Pocahontas and appellant/Low Down robbed Delgato and that Dangerfield
acquired the stolen property from them. 
Furthermore, in its closing argument, the State highlighted the
significance of Dangerfield=s identifications and characterized her statements as
fundamental evidentiary links: 

[Parinello] shows the photo spread with Samuel Walker
in it, and Dedra Dangerfield said that=s
Low Down.  That=s who I was talking about.  She is not a witness to the robbery, but
she is the one who connects up the names . . . .  

Detective Parinello told you Dedra Dangerfield picked
Samuel Walker also known as Low Down out of that photo spread, State=s
Exhibit 2.  

You know what? 
Have you seen a better photo spread?








He is Number 6. 
Eric picked him out like that.  AI=m sure that=s him,
Detective Parinello.  I=m sure of it. 
That=s the man who put the gun to my mother=s chest.@

Two days later Detective Parinello has the
information.  Dedra Dangerfield has
now made the positive identification.  AThat=s
Low Down, and that=s Pocahontas. 
That=s Samuel Walker.@

So, now with that information he
knows he has got the right person known as Low Down based on what Dedra
Dangerfield=s identification is . . . (emphasis added).

This emphasis on Dangerfield=s identifications of Ramos and
appellant indicates that Dangerfield=s out-of-court statements were much
more significant than the State acknowledges on appeal.  Therefore, we cannot determine beyond a
reasonable doubt that the challenged testimony did not contribute to appellant=s conviction.  

We sustain appellant=s sixth and eighth points of error
and hold that the admission of Dangerfield=s testimonial out-of-court statements
violated appellant=s Sixth Amendment rights. 
Because we sustain appellant=s sixth and eighth points of error,
we need not address appellant=s remaining points of error. 
We reverse and remand to the trial court.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed November 29, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  A jury
convicted appellant and sentenced him to forty-five years= confinement in the Texas Department of Criminal
Justice Institutional Division.





[2]  Eric left the
store before his mother and brothers to listen to the radio and turn on the air
conditioning in the car.  He testified
that he saw the red car in which the robber eventually escaped circling the
parking lot while the rest of his family was still inside the Wal-Mart.





[3]  Although
defense counsel objected to Parinello=s
testimony regarding Dangerfield=s role in the investigation, an appellate court must
consider all the evidence admitted at trial in conducting its sufficiency
review.  Moff v. State, 131 S.W.3d
485, 489 (Tex. Crim. App. 2004).

 





[4]  The record
indicates that Asame objection@ refers
to an objection that defense counsel made several pages earlier when the
prosecutor asked Parinello whether Eric Delgato had identified appellant in the
photo spread.  At that time, counsel had
stated: AViolates confrontational clause and it=s hearsay.@





[5]  The record
reveals a similar pattern throughout Parinello=s
testimony; counsel objected numerous times on confrontation or hearsay grounds,
and the court overruled the vast majority of these objections.  We find these additional objections
indicative of defense counsel=s consistent efforts to exclude portions of Parinello=s testimony.