Tavares Latra MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00148–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 24, 2005.

Decided July 26, 2005.

R. Scott Walker, Marshall, for appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Approximately one hour after responding to a report of domestic violence at the home of Kimberly Fifita and Tavares Latra Moore, police questioned Fifita and her nine-year-old son on videotape. In response to police questions, Fifita stated that Moore had assaulted her, by choking her, hitting her with a chair, and slamming her against a wall.[1] Fifita's son offered a few corroborating answers on the videotape. Although Fifita had been subpoenaed by the State to testify at Moore's resulting trial for assault,[2] she did not

---

1. During the early morning of March 17, 2004, an altercation occurred between Moore and Fifita, in the presence of Fifita's son. The confrontation resulted in several bruises to Fifita's legs and back. After Moore left the residence, he called the police and accused Fifita of assaulting him. The police were dispatched to the residence at seven o'clock that morning. At approximately eight o'clock, after advising Fifita of her *Miranda* rights, the police recorded the videotaped statements of Fifita and her son. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Moore was charged with and convicted of felony assault of a household member after having been convicted previously for assault of a household member. *See* Tex. Pen.Code Ann. § 22.01(b)(2) (Vernon Supp.2004–2005). He was sentenced to ten years' imprisonment.

appear in time to be examined in person.[3] Her son also did not testify. The videotape was admitted over Moore's objection.[4]

In two points of error, Moore contends that the introduction of the videotape was harmful error and that his motion for directed verdict should have been granted. We reverse his conviction and remand for a new trial because we hold (1) admitting the videotape was harmful error, and (2) denying Moore's motion for directed verdict was proper.

*(1) Admitting the Videotape Was Harmful Error*

In his first point of error, Moore argues that admitting the videotape violated the Confrontation Clause of the United States Constitution.[5] The State argues the videotape contained only excited utterances, all excited utterances are nontestimonial, and therefore this statement was properly admitted. We sustain Moore's first point of error because

(a) after *Crawford*,[6] the Confrontation Clause requires exclusion of testimonial statements unless there has been a prior opportunity for cross-examination;

(b) "testimonial" statements include at least prior testimony, police interrogations, and the like;

(c) an excited utterance is not necessarily nontestimonial;

(d) the videotape was testimonial and therefore was erroneously admitted; and

(e) admitting the videotape was harmful.

We examine each of those logical steps in that order.

*(a) After Crawford, the Confrontation Clause Requires Exclusion of Testimonial Statements Unless There Has Been a Prior Opportunity for Cross–Examination*

■ The Sixth Amendment provides, "in all criminal prosecutions, the accused

---

**3.** When the State subpoenaed Fifita, she informed the prosecuting attorney she would not be coming to trial and "might as well write her own obituary" if she testified against Moore. In violation of the subpoena, Fifita did not appear to testify at trial. In cases like this, the victims of domestic violence are often reluctant to participate in the prosecution of their abusers. As noted by other courts, scholars have estimated that as many as "eighty to ninety percent of domestic violence victims recant their accusation or refuse to cooperate with a prosecution." *Fowler v. Indiana*, 809 N.E.2d 960, 965 (Ind. Ct.App.2004), *trans. granted* (citing Tom Linger, *Evidentiary Issues in Federal Prosecutions of Violence Against Women*, 36 Ind. L.Rev. 687, 709 n. 76 (2003)); *see Spencer v. State*, 162 S.W.3d 877 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

**4.** The State introduced the videotape under the excited-utterance exception to the hearsay rule, and the investigating officer testified. Before the State rested and outside the presence of the jury, the trial court was able to contact Fifita on her cell phone and discovered she was in Shreveport, Louisiana. Fifita promised the trial court she would return to Longview and would arrive in about an hour. At that point, the State rested, the jury charge was read, and the jury retired for deliberations. After the jury had begun deliberations, Fifita arrived at the courthouse.

**5.** Moore raises the confrontation issue only under the United States Constitution. He makes no claim of such right under Article I, Section 10 of the Texas Constitution. *See* Tex.R.App. P. 38.1(h). Moore has not claimed that the state constitution provides greater or different protection than the federal constitution. *See Lagrone v. State*, 942 S.W.2d 602, 613 (Tex.Crim.App.1997); *Wall v. State*, 143 S.W.3d 846, 849 (Tex.App.-Corpus Christi 2004, pet. filed); *Hale v. State*, 139 S.W.3d 418, 421 (Tex.App.-Fort Worth 2004, no pet.). We therefore do not address any state constitutional issue.

**6.** *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

shall enjoy the right to ... be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Sixth Amendment's right of confrontation is a fundamental right and is applicable to the States by virtue of the Fourteenth Amendment." *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim.App.1991); *McClenton v. State*, 167 S.W.3d 86, 93 (Tex.App.-Waco 2005, no pet.).

Until recently, the application of the Confrontation Clause to an out-of-court statement was governed by *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *overruled in part, Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.[7] Under *Roberts*, the statement of an unavailable witness was admissible if it had sufficient "indicia of reliability." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. Reliability could be inferred if the evidence fell within a firmly rooted hearsay exception. *Id.*

■ In *Crawford*, the United States Supreme Court set out a new test for challenges to out-of-court statements based on the Confrontation Clause. *Crawford* held that the Confrontation Clause was a procedural guarantee which commands that "reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61, 124 S.Ct. 1354.[8] The Court held that,

"where testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. *Crawford* reasoned that the Confrontation Clause was intended to prevent the historic practice of using ex parte examinations as evidence against the accused. *Id.* The Court rejected the view that the Confrontation Clause applies only to in-court testimony and that the introduction of out-of-court testimonial statements depended on the laws of evidence. *Id.* at 61, 124 S.Ct. 1354. The Court determined that the framers of the Constitution would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he or she was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 68, 124 S.Ct. 1354.

*(b) "Testimonial" Statements Include at Least Prior Testimony, Police Interrogations, and the Like*

Though *Crawford* does not definitively define "testimonial,"[9] it does give some suggestions as to its meaning. The Court held that a statement, which was "knowingly given in response to structured police questioning," was testimonial. *Id.* at 53 n. 4, 124 S.Ct. 1354. The Court noted:

7. Several courts have suggested that nontestimonial statements are still governed by *Roberts*. *See Wiggins v. State*, 152 S.W.3d 656, 660 (Tex.App.-Texarkana 2004, pet. ref'd).

8. Of course, when a witness appears at trial and is subject to cross-examination, the Confrontation Clause is not violated. *See Champion v. State*, No. 06–04–00141–CR, 2005 WL 1147832 at *3 n.4 (Tex.App.-Texarkana May 17, 2005, no pet.); *Mumphrey v. State*, 155 S.W.3d 651, 657 n. 1 (Tex.App.-Texarkana 2005, pet. ref'd); *Carter v. State*, 150 S.W.3d 230, 241 n. 13 (Tex.App.-Texarkana 2004, no pet.); *see also Mason v. State*, No. 06–03–00199–CR, 2004 WL 1615785, at *2 n.1, 2004 Tex.App. LEXIS 6458, at *5 n. 1 (Tex.App.-Texarkana June 10, 2004, no pet.) (not designated for publication.)

9. Although *Crawford* is clearly a landmark decision, there is understandable uncertainty in its implementation. The Court declined to provide a comprehensive definition for testimonial statements. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. Until the Court provides that comprehensive definition, the meaning of "testimonial" will likely be refined by courts for some time.

"Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 1 N. Webster, An American Dictionary of the English Language (1828). An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Id.* at 51, 124 S.Ct. 1354. Testimonial statements are not limited to statements given under oath. *See id.* at 52, 124 S.Ct. 1354. In addition, the Court noted several proposed definitions for testimonial:

> Various formulations of this core class of "testimonial" statements exist: *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White v. Illinois,* 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae 3.*

*Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354. The first two proposed formulations relate to the formal nature of the interaction during which the statement was made. They focus on the formal quality of the statement and its similarity to ex parte in-court testimony. The third proposed formulation focuses on the reasonable expectations of an objective witness.

Yet the Court refused to adopt any of the proposed formulations as a core class of "testimonial" statements. The Court noted that the term "testimonial" includes at a minimum "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and to "police interrogations." *Id.* at 68, 124 S.Ct. 1354. In determining whether a statement is "testimonial," courts have examined the formal nature of the interaction, the intent of the declarant, or some combination of the two factors. We will examine each of these factors in turn.

*Formality.* The text of *Crawford* focuses extensively on the formal nature or quality of the interaction. The Court held "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. The Court analyzed at length historical ex parte examination practices and the original intent of the Confrontation Clause. As the Court emphasized, the Confrontation Clause "is a procedural rather than a substantive guarantee." *Id.* at 61, 124 S.Ct. 1354. Thus, if the nature of the interaction possesses a sufficiently formal quality such that it is the functional equivalent of ex parte in-court testimony, the statement is testimonial.

Some other courts have focused on the formal nature of the interaction. *See Lee v. State,* 143 S.W.3d 565, 570 (Tex.App.-Dallas 2004, pet. ref'd); *see also Ruth v.*

*State,* 167 S.W.3d 560, 568–69 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.) (whether statement is testimonial turns on procedure used to obtain it, not its contents). In *Lee,* the Dallas Court of Appeals held that an out-of-court statement of a codefendant made during a roadside stop, after he had been arrested and in response to questions of an officer, was testimonial. *See Lee,* 143 S.W.3d at 570. The court stated, "Although the statement in question was not audible on the recording, that does not alter the formality of the setting that was intended to record testimony for the prosecution of the case being investigated." *Id.* The State argues the Dallas Court of Appeals erred in focusing on the intent of the police officer in recording the statement. We disagree that the Dallas Court of Appeals erred in focusing on the intent of the police officer. The intent of the police officer is relevant because it is a strong indication that the interaction was the functional equivalent of a police interrogation. *See id.* Though the *Lee* interview may have lacked some of the formality of the interrogation addressed in *Crawford,* the Dallas Court of Appeals apparently concluded that formality in an interaction could be sufficiently similar to a formal police interrogation to make the statement testimonial.

The Indiana Court of Appeals has held that whether a statement is testimonial revolved around the official and formal quality of the statement. *See Fowler,* 809 N.E.2d at 963.

*Declarant's Intent.* Another approach of determining whether a statement is testimonial involves examining the intent of the declarant. The intent could be examined from either an objective or subjective point of view. While the proposed formulation noted by the Supreme Court views the intent of the declarant from an objective perspective, i.e., whether an objective witness would reasonably believe that the statement would be available for use at a later trial; the intent could also be examined from the subjective view of the declarant. While the Supreme Court in *Crawford* did not specifically adopt the subjective intent of the declarant in defining testimonial, it held that a statement "knowingly given in response to structured police questioning" was testimonial under any conceivable definition of interrogation. *Crawford,* 541 U.S. at 53, 124 S.Ct. 1354. This statement indicates that the subjective intent of the declarant may be relevant in determining if a statement is testimonial. This Court has held that co-conspirator statements made to another co-conspirator "were not made in a setting where it might reasonably be expected the statements would be used in judicial proceedings." *See Wiggins,* 152 S.W.3d at 659; *cf. Woods v. State,* 152 S.W.3d 105, 114 (Tex.Crim.App.2004) (casual remarks spontaneously made to acquaintances are nontestimonial).

Some courts have indicated that the subjective intent of the declarant is also relevant. *Key v. State,* No. 12–04–00030–CR, 173 S.W.3d 72, 76, 2005 WL 467167, *4, 2005 Tex.App. LEXIS 1573, at *13 (Tex. App.-Tyler Feb. 28, 2005, no pet.); *Fowler,* 809 N.E.2d at 965. *See* Chris Hutton, *Sir Walter Raleigh Revived: The Supreme Court Revamps Two Decades of Confrontation Clause Precedent in Crawford v. Washington,* 50 S.D. L.Rev. 41, 58 (suggesting "testimonial" includes both objective and subjective aspects).

*Hybrid Formulations.* Alternatively, "testimonial" could encompass some aspects of both the formal nature of the interaction and intent of the declarant formulations. As discussed below, we believe that Fifita's statement qualifies as testimonial under either formulation. Therefore, we decline to determine whether "testimo-

nial" refers to the formal nature of the interaction, the intent of the declarant, or some combination of the two approaches at this time.

*(c) An Excited Utterance Is Not Necessarily Nontestimonial*

The State argues that, as a class, excited utterances are not testimonial. It argues that excited utterances are not generally made in formal settings, for the purpose of preparing a criminal case for prosecution, and are frequently collected at the scene of the crime. The State further argues that an excited utterance cannot be testimonial since the declarant is dominated by the emotions, excitement, fear, or pain of the exciting event.

In support of its argument, the State cites *Fowler,* 809 N.E.2d 960; *Hammon v. State,* 809 N.E.2d 945 (Ind.Ct.App.2004), *trans. granted; People v. Cage,* 15 Cal. Rptr.3d 846 (Cal.Ct.App.2004), *review granted and superseded,* 19 Cal.Rptr.3d 824, 99 P.3d 2 (Cal.2004). The Indiana Court of Appeals stated:

> We further note that the very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." "The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful." *Hardiman v. State,* 726 N.E.2d 1201, 1204 (Ind.2000). To be admissible, an excited utterance "must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.* "The heart of the inquiry is whether the declarants had the time for reflection and deliberation." *Id.* An unrehearsed statement made without reflection or deliberation, as required to be an "excited utterance," is not "testimonial" in that such a statement, by definition, has not been made

in contemplation of its use in a future trial. *See Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364 . . . .

*Hammon,* 809 N.E.2d at 952–53; *see Fowler,* 809 N.E.2d at 964. We note that, in *Fowler,* the court also based its decision on its conclusion that the questioning did not constitute a classic "police interrogation." *Fowler,* 809 N.E.2d at 964.

At least one Texas court of appeals appears to have been persuaded by the reasoning of the Indiana Court of Appeals. The Tyler Court of Appeals has stated "we are persuaded that the underlying rationale of an excited utterance supports a determination that it is not testimonial in nature." *Key,* 2005 WL 467167 at *5. In making this determination, the Tyler Court of Appeals considered whether the statements were made with the reasonable expectation that they would be used in court. *Id.* at *4. Because an excited utterance is made by a declarant who has not had time for reflection or deliberation, the court reasoned that the declarant of such a statement did not contemplate its use at a future trial. *Id.* 2005 WL 467167 at *5.

The Fourteenth District Court of Appeals has recently rejected the notion that all excited utterances are nontestimonial. *Spencer v. State,* 162 S.W.3d 877, at 878–881 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Although the court held that a declarant's state of excitement can be considered when determining whether his or her statement is testimonial, the Fourteenth District refused to establish a bright-line rule that excited utterances can never be testimonial. *Id.* at 881. In addition, the Austin Court of Appeals has stated that the determination of whether a statement is testimonial does not turn on whether it qualifies under a hearsay exception. *See Davis v. State,* No. 03–04–00014–CR, 169 S.W.3d 660, 668–71, 2005

WL 1173964, at *6–9, 2005 Tex.App. LEX-IS 3773, at *20–29 (Tex.App.-Austin May 19, 2005, no pet.) (extensive analysis concluding excited utterances are not necessarily nontestimonial); *see also Scott v. State*, 165 S.W.3d 27, 47, (Tex.App.-Austin Mar.24, 2005, no pet.) (whether statement is testimonial does not turn on whether it qualifies as self-inculpatory within meaning of hearsay exception). We agree with the reasoning of the Austin Court of Appeals and the Fourteenth District Court of Appeals. Each statement must be analyzed individually independent of whether it is an excited utterance under the Texas Rules of Evidence.

The *Crawford* decision specifically excludes a statement's exemption based on the Rules of Evidence. While the Supreme Court noted that "not all hearsay implicates the Sixth Amendment's core concerns," it also opined that "leaving the regulation of the confrontation out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354. If we held that all excited utterances were nontestimonial, we would be leaving the regulation of the Confrontation Clause to the Rules of Evidence, which is specifically prohibited by *Crawford*.[10] The mere fact that a statement may be an excited utterance does not satisfy the Confrontation Clause concerns espoused in *Crawford*. Under *Crawford*, whether the introduction of a statement violates the Confrontation Clause is entirely independent of the Texas Rules of Evidence. "The threshold question imposed by *Crawford* is whether the proffered out-of-court statement is 'testimonial' in nature." *Brooks v. State*, 132 S.W.3d 702, 707 (Tex.App.-Dallas 2004, pet. ref'd); *see Crawford*, 541 U.S. at 36, 124 S.Ct. 1354. While many excited utterances will be nontestimonial, we are unwilling to conclude that a statement is not testimonial simply because it is an excited utterance.

*(d) The Videotape Was Testimonial and Therefore Was Erroneously Admitted*

■■■ Whether the right of confrontation has been violated should be reviewed de novo.[11] We note that the State argues that this appeal involves an evidentiary ruling, which is reviewed for an abuse of discretion. The State cites *Wilson* in urging us to review the trial court's ruling for an abuse of discretion. *Wilson*, 151 S.W.3d at 699. But *Wilson* held that the standard for reviewing a potential Confrontation Clause violation was de novo. *Id.* at 697. Only after the statements had been determined to be nontestimonial did the court review the admission of the statement under an abuse of discretion standard. *Id.* at 699. We will review the trial court's determination that the statement is nontestimonial de novo.

Under the circumstances of this case, Fifita's statement, that was recorded on videotape, is testimonial. At the time the statement was made, Moore had reported to the police that Fifita had assaulted him. The police officer informed Fifita of her

---

10. The Supreme Court suggested that dying declarations may be an exception to the Rules of Evidence not applying to Confrontation Clause challenges, but chose not to decide that issue. *Crawford*, 541 U.S. at 56 n. 6, 124 S.Ct. 1354.

11. *McClenton*, 167 S.W.3d at 93; *Scott*, 165 S.W.3d at 45; *Wilson v. State*, 151 S.W.3d 694, 697 (Tex.App.-Fort Worth 2004, pet. ref'd); *Wall*, 143 S.W.3d at 849; *Brooks*, 132 S.W.3d at 705; *see Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *see also Ponce–Duron v. State*, No. 2–03–362–CR, 2004 WL 2568122, 2004 Tex.App. LEXIS 10149 (Tex.App.-Fort Worth Nov. 12, 2004, no pet.) (not designated for publication) (de novo review).

*Miranda* rights before the interview, and the statements of Fifita and her son were made in response to questioning by the police officer. At trial, the State used the resulting videotape as the functional equivalent of in-court testimony.

The formal nature of the interaction indicates that the statement is testimonial. Although the interview was conducted at Fifita's residence, the videotaped interview is, or is similar to, a police interrogation. The Supreme Court explicitly held that "statements taken by police officers in the course of interrogations" are clearly testimonial. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. *Crawford* asserted that it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at 53 n. 4, 124 S.Ct. 1354. "Colloquial" means "used in or characteristic of familiar and informal conversation." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1993). Even if the interview was not a police interrogation in the technical legal sense, it qualifies in the colloquial sense. Moore had been previously interviewed after he reported to the police that Fifita had assaulted him. Fifita was read her rights and asked several questions concerning the events of that morning. She was aware that she was being videotaped and that evidence was being collected. Even though the interview was not as formal as many police interrogations, the purpose of the interview was the same as a typical police interrogation—to record testimony for the prosecution of the offense being investigated. The formality of the videotaped statement greatly favors a finding of the statement being testimonial.

Further, both the subjective intent of the declarant and the reasonable expectations of an objective witness indicate that the statement is testimonial. Fifita understood that the statement could be used to investigate or prosecute the offense and was conscious that she was bearing witness. The State argues that an excited utterance cannot be given solemnly or with the purpose of establishing a fact in court. We disagree. Even if a declarant is still under the influence of the traumatic event and has not had sufficient time to reflect on the incident, the declarant can still understand, under certain circumstances, that the statement will be used for prosecution. In this case, Fifita stated that she understood her *Miranda* rights. Fifita clearly understood that the videotape was being taken to preserve evidence for later use. Further, an objective witness could reasonably expect the videotaped statement to be available for use at a trial.

Texas cases have held that statements similar to the statement at issue were testimonial.[12] Both the formal nature of the interaction and the intent of the declarant indicate that the statement was testimonial. We conclude Fifita's recorded out-of-court statement made in response to the questioning of the police officer, especially after she had been warned of her rights under *Miranda,* are testimonial.

**12.** *Samarron v. State,* 150 S.W.3d 701, (Tex. App.-San Antonio 2004, no pet.) (statement taken approximately an hour after incident, in response to police questioning, admitted under excited-utterance exception); *Gutierrez v. State,* 150 S.W.3d 827, 830 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (videotaped statement held testimonial); *Jahanian v. State,* 145 S.W.3d 346, 349 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (written statement made after declarant became suspect); *see Wall,* 143 S.W.3d at 851 (victim's statement at hospital held testimonial); *Hale v. State,* 139 S.W.3d 418, 420 (Tex.App.-Fort Worth 2004, no pet.) (codefendant's statement to police); *Brooks,* 132 S.W.3d at 707 (codefendant's written statement to police). *But see Cassidy v. State,* 149 S.W.3d 712, 716 (Tex.App.-Austin 2004, pet. ref'd) (victim's statement to police at hospital admitted as excited utterance held not result of interrogation).

In addition, we believe the brief statement given by Fifita's son is testimonial as well. While Fifita was being interviewed on the videotape, Fifita called her son in from an adjoining room at the police officer's request. Fifita's son stated that he saw Moore grab his mother around the neck, appear to choke her, and throw her against the wall. While the officer did not read the son his rights, the police officer did introduce himself and inform the son that he was investigating the "incident" which occurred that morning. The formal nature of the statement indicates it was testimonial. The interview was the functional equivalent of in-court testimony. The son was aware that he was being videotaped and that evidence was being collected. The purpose of the interview was to memorialize the evidence and preserve it for trial. Further, an objective witness would reasonably believe that the statement would be available for use later at trial. The police officer informed the son that he was investigating the "incident," and the son could observe the statement was being videotaped. Both the formal nature of the interaction and the intent of the declarant indicate that the statement was testimonial. We conclude Fifita's son's recorded, out-of-court statement made in response to the questioning of the police officer, after being informed the officer was investigating "the incident," was testimonial. Therefore, admitting the videotape was error.

*(e) Admitting the Videotape Was Harmful*

When a defendant's rights under the Confrontation Clause are violated, we must reverse the trial court's judgment due to constitutional error unless it is determined beyond a reasonable doubt that the error did not contribute to the appellant's conviction. TEX.R.APP. P. 44.2(a);

*McClenton*, 167 S.W.3d at 94–95; *Wall*, 143 S.W.3d at 851.

■ In determining if the error contributed to the appellant's conviction, we apply the factors enunciated by the Supreme Court in *Delaware v. Van Arsdall*. *McClenton*, 167 S.W.3d at 95; *see Delaware v. Van Arsdall*, 475 U.S. 673, 686–87, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). These factors include (1) the importance of the witness' testimony, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the witness' testimony, (4) the extent cross-examination was permitted, and (5) the overall strength of the State's case. *McClenton*, 167 S.W.3d at 95; *see Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431. If, after considering the above factors, we cannot conclude beyond a reasonable doubt that the error did not contribute to the appellant's conviction, we must reverse the trial court's judgment. *McClenton*, 167 S.W.3d at 95–96. Our inquiry focuses on whether the complained-of error contributed to the jury's verdict—regardless of the sufficiency of the legally admitted evidence. *Id.; Bratton v. State*, 156 S.W.3d 689, 693 (Tex.App.-Dallas 2005, no pet.).

■ The *Van Arsdall* factors indicate that the error did contribute to Moore's conviction. The videotape was not merely cumulative of other testimony and was of great importance. The videotape contained the only direct evidence that Moore assaulted Fifita. Moore had no opportunity for cross-examination. Further, the State's case was weak without the videotape. While Fifita's injuries did partially corroborate the statement, the corroboration is insufficient to conclude beyond a reasonable doubt that the error in admit-

ting the videotape did not contribute to the conviction.[13]

We sustain Moore's first point of error.[14]

*(2) Denying Moore's Motion for Directed Verdict Was Proper*

■ In his second point of error, Moore alleges the trial court erred in denying his motion for a directed verdict. A point of error complaining about a trial court's failure to grant a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996); *Smith v. State*, 109 S.W.3d 80, 81 (Tex. App.-Texarkana 2003, no pet.). In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This requires us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential ele-

ments of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999); *Glover v. State*, 102 S.W.3d 754, 759 (Tex.App.-Texarkana 2002, pet. ref'd).

■ Blackburn testified to some of what Fifita told him the morning of the assault, but he did not recount any allegation from Fifita that Moore assaulted her. Further, we are required to consider the videotape as part of the evidence for this review, even though it should not have been admitted. Even erroneously admitted evidence must be considered when addressing a challenge to the sufficiency of the evidence. *Glover*, 102 S.W.3d at 759. Both Fifita and her son describe on the videotape the assault and identify Moore as the person who committed the assault.

**13.** Though not argued by the parties, one might question whether Officer Michael Blackburn's testimony concerning his encounter with Fifita the morning of the incident might cure the error in admitting the videotape. While some of Blackburn's testimony was objected to, the defense did not make objections to all of his testimony. Any error in allowing inadmissible evidence is cured when the same evidence comes in without objection elsewhere at trial. *Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993). Yet, when the other evidence is not subject to the same basis for an objection, admission of the same substance elsewhere does not cure the improper admission. *Matz v. State*, 14 S.W.3d 746, 747 (Tex.Crim.App. 2000) (when defense objection is based on form of evidence, i.e., hearsay, defense's failure to object to evidence with same substance did not cure error in admitting inadmissible evidence). Since the objection to the excited utterances contained on the videotape concerned the Confrontation Clause, Blackburn's testimony might have been objected to on the same basis. The unobjected-to testimony of Blackburn, though, did not concern the sub-

stance of Fifita's statement, but rather that Fifita had visible injuries, appeared to be nervous and startled, and later sought a protective order. We believe that the unobjected-to testimony of Blackburn does not contain sufficiently similar substance to cure the improper admission. We note that the San Antonio Court of Appeals has held, when the error involves the denial of a constitutional right, the admission of other evidence proving the same facts is only one factor to consider when deciding whether harm resulted and is not dispositive on its own. *Rodriguez v. State*, 926 S.W.2d 379, 381 (Tex.App.-San Antonio 1996, no pet.).

**14.** *Crawford* noted that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." *Crawford*, 541 U.S. at 62, 124 S.Ct. 1354. Although the State alleged at trial that the victim was afraid of testifying, the State neither argues on appeal that Moore forfeited his confrontation claims, nor alleges any acts committed by Moore which may have forfeited his confrontation claims.

In addition, the videotape reveals Fifita's injuries. Because we are to consider even erroneously admitted evidence in determining if the evidence is sufficient, the evidence is legally sufficient. The trial court did not err in denying the motion for directed verdict. We overrule Moore's second point of error.

We reverse the judgment of the trial court and remand this case for a new trial.