

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00121-CR

_____

CEDRIC JAMES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2008-1145

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Cedric James was sentenced to 365 days in state jail after a jury found him guilty of assault committed against Jamie Valentine, his girlfriend, and the trial court made a determination that it was family violence. On appeal, James alleges that the trial court erred in admitting the victim's hearsay statements under the excited-utterance exception. Based on this point of error, James contends the evidence was legally and factually insufficient to support the trial court's judgment. In addition to this coupled contention, for the first time on appeal, James also claims that admission of the victim's statements violated his constitutional right to confront witnesses. Finally, James contends that if his trial counsel failed to preserve error concerning the constitutional right to confront a witness, then that failure of preservation of error was cause to find that James was not provided the effective assistance of counsel at trial. We affirm.

I. **Factual and Procedural Background**

Valentine appeared at the house of her mother, Robbie Denise Cooks, sporting a newly-acquired swollen eye. Cooks promptly called the emergency 9-1-1 number and informed the dispatcher that "this guy named Cedric James has jumped on my daughter" and she "got a big knot upside her head—beside her eye." Valentine, who was not served with a subpoena, did not appear at James's trial. Instead, Cooks was called to testify that her daughter had come to her house "crying, her eye was swollen." Over hearsay objections, Cooks claimed that Valentine "said that her and Cedric got into it." However, no objections were lodged at a later time during Cooks's testimony

2

when she repeated that "[Valentine] said they was arguing" and "[t]hey had got into it." Cooks then told the jury she did not remember what Valentine said and just "assumed they must have been fighting." During cross-examination, Cooks clarified that Valentine did not actually say that James had struck her and that "[s]he didn't actually tell me that they got into it."

In addition to the evidence provided by Cooks, the State presented testimony from Officer Justin Mills of the Marshall Police Department, who discussed the condition of Valentine's eye and told the jury Valentine was still upset and crying when he talked to her. Over hearsay objections, Mills was allowed to testify that "[s]he said that her boyfriend, Cedric James, hit her in the face." Yet, subsequent testimony that Valentine said, "Cedric James was the one that hit her," was met with no objection. Mills also told the jury, without objection, that James became the center of his investigation based on Valentine's answers to questions about who assaulted her, a standard affidavit provided by Valentine, and a sworn statement made by her.[1]

The jury found James guilty of assault, and the trial court made an affirmative finding of family violence pursuant to Article 42.013 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2006).

## II. Admission of Cooks's and Mills's Statements Over a Hearsay Objection Was Not Harmful Error

We review a trial court's admission of evidence for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim.

---

[1]The affidavit and sworn statement were not introduced as evidence.

App. 2007).  A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239 (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).  Unless there is clear abuse of the trial court's discretion, its ruling will not be reversed. *Id.*

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  TEX. R. EVID. 801(d). Hearsay testimony is generally inadmissible at trial unless the statements fall within a recognized exception to the hearsay rule.  TEX. R. EVID. 802; *McCarty*, 257 S.W.3d at 239.  Rule 803(2) of the Texas Rules of Evidence provides an exception to the hearsay rule for a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  TEX. R. EVID. 803(2).  The basis for the excited utterance is psychological, and considers "the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for *reflection* necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)).

The critical determination is whether Valentine was still dominated by emotions at the time of the statement to such a degree as would reasonably show that the statement "resulted from impulse rather than reason and reflection."  *Id.* at 596 (citing *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964)).  Nondispositive considerations in determining whether a hearsay statement is

admissible include the amount of time that elapsed between the event and the time of the statement and whether the statement was made in response to a question. *Id.* at 595–96; *see Oveal v. State*, 164 S.W.3d 735, 740 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("If the statement is made while the declarant is still in the grip of emotion, excitement, fear, or pain and the statement relates to the exciting event, it is admissible even after an appreciable amount of time has elapsed.").

Both Cooks and Mills testified that Valentine was upset and crying when the statements were made to them.[2] Cooks believed that Valentine had said that "her and Cedric got into it" about ten to fifteen minutes after the incident occurred. Although Mills stated "[b]y the time we got there, I mean, I'm sure the shock had worn off," he also "had to calm her down to find out, you know, where the actor might be at." Valentine's answer to a standard form provided by Mills said she would feel danger after the officer left. Based on these facts, which indicate that Valentine may still then have been dominated by emotions when making her statements to Cooks and Mills, we cannot say the trial judge's discretionary decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.[3] *See Oveal*, 164 S.W.3d at 740–41 (statements made two hours after incident were still excited utterances).

---

[2]James points to Cooks's testimony denying that Valentine was excited. The word "excited" has many connotations. We believe the trial court was in the best position to determine how Cooks interpreted the term based on Cooks's expressions during her testimony.

[3]We also conclude that since Valentine's statements were excited utterances, counsel was not ineffective in failing to lodge a hearsay objection to all statements.

Moreover, even if one assumes that admission of those statements was in error, such an error would not be reversible, harmful error due to cumulative testimony. *Bryant v. State*, 282 S.W.3d 156, 163 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed). Testimony that "[Valentine] said they was arguing" and "Cedric James was the one that assaulted her," prompted no objections and proved the same facts. *See Liggens v. State*, 50 S.W.3d 657, 662 (Tex. App.—Fort Worth 2001, pet. ref'd). Further, there was no objection raised to Cooks's statements during the 9-1-1 call that "this guy named Cedric James has jumped on my daughter." This point of error is overruled.

## III. Counsel Was Not Ineffective for Failing to Lodge Confrontation Clause Objections

Next, James contends testimony regarding Valentine's statements violated his rights under the Confrontation Clause.[4] "[F]ailure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (footnote omitted). General rules of preservation must be followed to preserve error on Confrontation Clause grounds. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004); *Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.—San Antonio 2008, pet. ref'd). "An objection on hearsay does not preserve error on Confrontation Clause grounds." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *see also Paredes*, 129 S.W.3d at 535. Because counsel objected only on the basis of hearsay and did not object to Cooks's and Mills' statements on Confrontation

---

[4]"[I]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI.

6

Clause grounds, any error regarding a violation of the Confrontation Clause has not been preserved for review. TEX. R. APP. P. 33.1. Since there was no preservation of any such error, it will not be considered. We examine whether this failure amounted to ineffective assistance of counsel.

### A. Standard of Review

Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). From the record received by this Court (which does not include counsel's reasons for the alleged failures), James bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984); *see Goodspeed*, 187 S.W.3d at 392.

The two-pronged *Strickland* test handed down by the United States Supreme Court is applied to determine whether James's counsel was ineffective in having failed to preserve any Confrontation Clause issues. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, if either prong of the *Strickland* test fails, we need not examine the other. *Strickland*, 466 U.S. at 697.

First, James must show that counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Id.* at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance

7

and that the challenged action could be considered to have been prompted by sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, absent contrary evidence, we will not second-guess the strategy of James's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). In this case, since the record is silent as to why counsel failed to make a Confrontation Clause objection, we will assume it was due to any strategic motivation that can be imagined. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd).

To meet the second prong of the *Strickland* test, James must show that the deficient performance damaged his defense to such a degree that there is a reasonable probability that the result of the trial would have been different had it not occurred. *Strickland*, 466 U.S. at 694; *Tong*, 25 S.W.3d at 712. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

### B.    Post-*Crawford* Confrontation Clause

The admission of a testimonial, out-of-court statement from a declarant who does not appear at trial violates the Confrontation Clause unless the declarant was unavailable to testify at trial and the defendant had a prior opportunity for cross-examination.[5] *Crawford v. Washington*, 541 U.S.

---

[5]The admission of an out-of-court statement violates the Confrontation Clause only if the witness does not actually testify at trial. *See Mumphrey v. State*, 155 S.W.3d 651, 657 n.1 (Tex.

36, 68 (2004). Such statements may violate the Confrontation Clause "even if the statement 'falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'"" *Wall v. State*, 184 S.W.3d 730, 734–35 (Tex. Crim. App. 2006).

The Texas Court of Criminal Appeals has rejected any "categorical approach" to analyzing *Crawford* claims on appeal. *Id.* at 742; *see also Moore v. State*, 169 S.W.3d 467, 470–71 (Tex. App.—Texarkana 2005, pet. ref'd). Nor does appellate review require strict deference to the trial court's decision. *Wall*, 184 S.W.3d at 742. Instead, the issue of whether a statement is to be deemed "testimonial" for *Crawford* purposes is an issue that we review de novo. *Id.*; *Moore*, 169 S.W.3d at 474. Although the United States Supreme Court has not yet provided a comprehensive definition of the term "testimonial," it has held that the term generally includes statements given in response to police interrogation. *Crawford*, 541 U.S. at 63, 67–68; *Wall*, 184 S.W.3d at 736. Expanding on the holding in *Crawford*, the United States Supreme Court has held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006) (footnote omitted).

In conducting the required de novo review, the testimonial nature of the statement depends upon whether "a reasonable declarant, similarly situated (that is, excited by the stress of a startling

---

App.—Texarkana 2005, pet. ref'd).

event), would have had the capacity to appreciate the legal ramifications of her statement." *Wall*, 184 S.W.3d at 742. Generally, statements made to police while the declarant is still in personal danger are not

> made with consideration of their legal ramifications because the declarant usually speaks out of urgency and a desire to obtain a prompt response; thus, those statements will not normally be deemed testimonial. But after the immediate danger has dissipated, a person who speaks while still under the stress of a startling event is more likely to comprehend the larger significance of his words: "If the record fairly supports a finding of comprehension, the fact that the statement also qualifies as an excited utterance will not alter its testimonial nature."

*Id.* (footnote omitted).

The test set out in *Davis* and quoted above in distinguishing between a testimonial and a nontestimonial statement would appear to apply primarily to the most common situations in which such statements arise: statements made to police officers. However, the last sentence ("that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution") would seem to have the Confrontation Clause apply in some other circumstances as well. Taking into consideration that the statements made by Valentine, the victim, to Cooks, her mother and neighbor, immediately after the beating, one does not assume that they were made to "establish or prove past events" for the purpose of subsequent criminal prosecution. Reiterating, the Sixth Amendment bars the admission of *only testimonial* statements of a witness who did not testify at trial and was not subject to cross-examination by the defendant. *Crawford*, 541 U.S. at 53–54. The Confrontation Clause protection does not apply to nontestimonial

10

statements. An accuser who makes a formal statement to a law enforcement officer bears testimony in a sense that statements made to a close acquaintance may not. *See Davis v. State*, 268 S.W.3d 683, 709–10 (Tex. App.—Fort Worth 2008, pet. ref'd); *Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005), *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006).

"The timing, purpose, and setting of a challenged statement can be relevant considerations when determining whether the statement's primary purpose is testimonial." *Lollis v. State*, 232 S.W.3d 803, 806 (Tex. App.—Texarkana 2007, pet. ref'd). Here, counsel could have chosen to make no objection to informal statements made by Valentine to her mother since they were not testimonial. The primary purpose of that communication would not have been to establish or prove past events potentially relevant to later criminal prosecution. Recognizing the usual kind of relationship between mothers and daughters, it would have been more likely that Valentine was seeking succor and sympathy from her mother and she was not making the statements to promote later prosecution of James.

In contrast to the statements made by Valentine to her mother, the statements made by her to Mills have a different character. A "reasonable person would have appreciated the fact that the officers were conducting a criminal investigation and collecting evidence for a prospective prosecution" of James, and we find those statements to Mills testimonial. *Wall*, 184 S.W.3d at 745. Because Valentine did not appear at trial and was not shown to be unavailable and James did not have an opportunity to cross-examine her, admission of the statement made by Valentine to Mills

11

violated the Confrontation Clause. One should take into account that the right to effective assistance of counsel merely ensures the right to reasonably effective (not perfect) assistance and this right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

Further, *Crawford* error is constitutional error that is subject to a harm analysis. TEX. R. APP. P. 44.2(a); *McNac v. State*, 215 S.W.3d 420, 421 (Tex. Crim. App. 2007). Sound trial strategy could include only objecting to statements which would constitute reversible error. Isolated mistakes or improper evidence or argument do not constitute ineffective assistance of counsel. *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Counsel could have also made a strategic decision to not object to statements to Mills if he believed the error would not contribute to conviction or punishment. *See Wall*, 184 S.W.3d at 745–46. Four factors are considered in analyzing harm from *Crawford* error: (1) the importance of the hearsay statements to the State's case; (2) whether the hearsay evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and (4) the overall strength of the State's case. *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1344 (2007). Under the Confrontation Clause analysis, statements made by Valentine to Cooks were not testimonial in nature. Those statements, coupled with the 9-1-1 emergency call,[6] were cumulative of, and corroborated the statements that Valentine made to

[6]No objection (either as to hearsay or on Confrontation Clause grounds) was made to the introduction of the content of this call and a failure to object to its admission was not raised as a

12

Mills. Thus, statements to Mills were not of utmost importance to the State's case, which could have been established without them. Because there was not harm in admitting Valentine's statements to Mills, we conclude that counsel was not ineffective for failing to object.

## IV. The Evidence Was Legally and Factually Sufficient to Support the Verdict

### A. Legal Sufficiency

The requirement of legal sufficiency confirms that a fact question was raised by the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was insufficient to raise an issue of James's guilt, there was no issue for the jury's resolution. *Id.* When conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational jury could find the essential elements of assault as charged by the indictment beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Once we determine the evidence raised issues for the jury's resolution, we will not sit as the thirteenth juror, re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts

point on appeal as an example of ineffective assistance of counsel.

13

in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

**B.** **Factual Sufficiency**

Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is so obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani*, 97 S.W.3d at 595; *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is one which is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997).

Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and set aside the verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we will only ensure that the jury reached a rational decision and will find the evidence factually insufficient only when it is necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135; *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)).

14

## C.    The Hypothetically-Correct Jury Charge

Our analysis of whether the evidence is legally and factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically-correct jury charge for the case.[7] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281.

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009). Therefore, it was necessary for the State to prove beyond a reasonable doubt that (1) James (2) knowingly, intentionally, or recklessly (3) caused bodily injury (4) to another person. Unless other findings (not applicable to this case) are made, assault is a class A misdemeanor punishable by confinement in jail for a term not to exceed one year. TEX. PENAL CODE ANN. § 12.21 (Vernon 2003), § 22.01(b).

In order for the court to have made an affirmative finding that family violence was involved, it was necessary for it to have found that the victim was a person whose relationship with James fit

---

[7]*Malik* controls "*even in the absence of alleged jury charge error.*" *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

into one of the categories described by Sections 71.0021(b), 71.003, or 71.005 of the Texas Family Code. TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (Vernon 2008).

**D.     Analysis**

Even erroneously admitted evidence is considered when addressing a sufficiency challenge. *Moore*, 169 S.W.3d at 477. From an evidentiary standpoint, Cooks's 9-1-1 call established that "Cedric James has jumped on [her] daughter." Cooks relayed Valentine's statement that Valentine had just been arguing with James. The 9-1-1 call and Valentine's statements to Mills demonstrated that Valentine had just been assaulted. Mills concluded that James was at the center of the investigation. Pictures of Valentine with her swollen eye evidenced the injury she sustained. When reviewing this evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that after an argument, James intentionally, knowingly, or recklessly caused bodily injury to Valentine. Further, even when reviewing the evidence in a neutral light, we cannot say that proof of James's guilt is so obviously weak as to undermine confidence in the verdict, or is greatly outweighed by contrary proof so as to be clearly wrong and unjust. The evidence was legally and factually sufficient to support the jury finding that James committed assault.

Further, we believe the trial court was correct in its affirmative finding of family violence. "'Family violence' means: . . . (3) dating violence, as that term is defined by Section 71.0021." TEX. FAM. CODE ANN. § 71.004 (Vernon 2008). "'Dating violence' means an act by an individual that is

16

against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault . . . ." TEX. FAM. CODE ANN. § 71.0021(a) (Vernon 2008).[8] It is undisputed that James and Valentine were "individuals who have or have had a continuing relationship of a romantic or intimate nature" and were, therefore, in a dating relationship. TEX. FAM. CODE ANN. § 71.0021(b) (Vernon 2008). Since the jury determined that James assaulted Valentine, the trial court was justified in making the affirmative finding that family violence had occurred.

## V. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: October 22, 2009
Date Decided: November 5, 2009

Do Not Publish

---

[8]Under these statutes, the trial court was not required to find that James and Valentine were living in the same household before finding family violence.

17