NO. 07-07-0350-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 15, 2008
______________________________

LEONESEO SANCHEZ, 

                                                                                                 Appellant
v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-415,499; HON. JIM BOB DARNELL, PRESIDING

_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Leoneseo Sanchez appeals his convictions on two counts of aggravated assault
with a deadly weapon. Three issues lay before us. He initially contends that his two
convictions violated his right against double jeopardy. Then, he argues that the trial court
erred in allowing the investigating officers to reiterate at trial what the victim said to them,
and in doing so, the trial court both denied him his right to confront witnesses and violated
the hearsay rule. We affirm the judgment. 
 
          Issue 1 - Double Jeopardy
          Appellant argues in his first issue that his conviction on both counts of aggravated
assault with a deadly weapon subjected him to violation of his right against double
jeopardy. The State had charged him with 1) intentionally, knowingly, and recklessly
causing bodily injury to Melinda Aguilar (his girlfriend) by striking her with a hard object and
using a firearm which in the manner of its use or intended use was capable of causing
death and serious bodily injury, and 2) intentionally and knowingly threatening her with
imminent bodily injury and using a deadly weapon that in the manner of its use or intended
use was capable of causing death and serious bodily injury. It is appellant’s contention that
these allegations are merely two alternative ways of committing one crime which subjected
him to punishment twice for that crime. We disagree and overrule the issue.
          The protection against double jeopardy is inapplicable where separate and distinct
offenses occur in the same transaction. Spradling v. State, 773 S.W.2d 553, 556 (Tex.
Crim. App. 1989). This is true even if the acts are committed close in time to one another. 
Hutchins v. State, 992 S.W.2d 629, 633 (Tex. App.–Austin 1999, pet. ref’d, untimely filed);
see Marcotte v. State, No. 07-01-0418-CR, 2003 Tex. App. Lexis 225 at *6 (Tex. App.–
Amarillo January 10, 2003, no pet.) (not designated for publication). And, that is the
situation here.
          Assault may be committed in several ways. One is to intentionally, knowingly or
recklessly cause bodily injury to someone. Tex. Pen. Code Ann. §22.01(a)(1) (Vernon
Supp. 2008). Another is to intentionally or knowingly threaten someone with imminent
bodily injury. Id. §22.01(a)(2). Moreover, these crimes may become “aggravated” under
the Penal Code either when they cause serious bodily injury or the actor uses or exhibits
a deadly weapon during their commission. Id. §22.02(a)(1) & (2). According to the State,
one of each occurred during appellant’s two hour attack upon Aguilar, and because they
were distinct offenses, double jeopardy did not apply. 
          The record before us reveals that Aguilar told the jury that appellant began
assaulting her in her “boy’s” room. She was removing a suitcase from the closet when
appellant struck her. She was then dragged by the hair into the middle of the room where
he continued his attack. Eventually, the couple found themselves in Aguilar’s bedroom. 
Once there, appellant retrieved a handgun from the closet and hit Aguilar with it on her
head. This blow resulted in her suffering a gash on her head which began bleeding. 
According to the victim, “[t]here was like blood everywhere . . . . ” Around this time, she
also heard the “snap” of the gun being fired, though no projectile was discharged. 
          Soon, appellant told Aguilar to enter the shower and wash off the blood on her. She
complied, and as she did, she would peer out the sliding shower doors and see the bullets
and gun. Furthermore, during this break from the physical assault, appellant was notably
calm at times. And, when calm, he would also appear penitent. Yet, Aguilar noticed that
he would “flare up all over again”; “. . . it was just going kind of back and forth.” It was at
this time, appellant stated that 1) there were two bullets in the gun, and “one was for [her]
and one was for him,” and 2) he was going to leave but that she should not call the police
because by the time she did, “he could have already . . . hurt somebody in my family, or
[her] boys.” 
          Next, Aguilar was directed by appellant to exit the shower and get in bed. After she
did, he spoke of seeing demons and “smiling” spirits in the room. Aguilar invited him to
pray with her, at which time appellant grew calm, asked how her injuries had happened,
and fell asleep.
          In considering the aforementioned evidence, we note various stages to the incident. 
The first involved actual, physical violence wherein appellant beat the victim with hands,
feet, and firearm. It was during this period that she heard the weapon being discharged
or misfired. The second stage began once appellant witnessed the blood coming from her
scalp and told her to shower. No longer physically violent, his acts grew psychological in
nature with him 1) growing calm only to become angry again, 2) threatening to use one of
the two bullets on her, 3) threatening to harm her family and children if she contacted the
police, and 4) speaking of demons and spirits. 
          While different in many respects from the factual scenario in Ruiz v. State, No. 13-01-0157-CR, 2002 Tex. App. Lexis 735 (Tex. App.–Corpus Christi January 31, 2002, no
pet.) (not designated for publication), our situation is akin to that in Ruiz in one important
way, and because of that, we find Ruiz helpful. There, the appellant first struck his victim
outside a bar while the victim was exiting a vehicle. He then stopped, entered the bar,
spoke briefly with someone, and returned to the victim only to strike him again. That the
attacks occurred in identifiable, discrete stages led the Ruiz court to conclude that the
appellant was not being twice punished for the same crime. Rather, two different assaults
actually occurred which entitled the State to prosecute Ruiz for both free of any limitations
imposed by double jeopardy. Id. at *4-5. 
          As alluded to above, we too have a scenario depicting two different attacks. Though
rather close in time, the latter arose after a break from the former, that break coming when
Aguilar entered the shower. Moreover, the assaults changed in nature from physical to
psychological. Given this, we see no reason to stray from the holding in Ruiz. The State
is correct; appellant was not twice tried, convicted, and punished for the same offense but
rather for two different crimes. That each crime violated the same penal statute is
inconsequential. Marcotte v. State, supra. Consequently, the limitations imposed by
double jeopardy were not exceeded. 
          Issue 2 - Confrontation Clause
          Next, appellant argues that he was denied his right to confront witnesses when the
trial court allowed the investigating police officers to reiterate what Aguilar had told them
about the assaults, who committed them, and how they transpired. We overrule the issue. 
       When the witness who uttered the words that are being repeated is present at trial
for cross-examination, the accused is not being denied his right to confront that witness. 
Eustis v. State, 191 S.W.3d 879, 886 (Tex. App.–Houston [14th Dist.] 2006, pet. ref’d);
Hanson v. State, 180 S.W.3d 726, 731 (Tex. App.–Waco 2005, no pet.); Moore v. State,
169 S.W.3d 467, 470 n.8 (Tex. App.–Texarkana 2005, pet. ref’d). Aguilar was both
present for and testified at trial. Thus, appellant had the opportunity to confront her. 
          Issue 3 - Hearsay
          Finally, appellant contends that the same out-of-court statements we addressed in
issue two were inadmissible hearsay and, therefore, subject to exclusion on that ground. 
Since the trial court admitted them, it purportedly erred. We overrule the issue.
          As previously mentioned, Aguilar appeared and testified at trial. She told the jury
what occurred and explained how appellant both beat and threatened her with his hands
and with the gun. Moreover, one or more officers testified about seeing blood in the
chamber of the handgun, a bleeding gash on Aguilar’s head, and her “extremely swollen”
face and eyes. Moreover, appellant does not question on appeal the admission of this
evidence. Nor does he dispute the similarity between it and what the officers said Aguilar
told them. So, what we have before us is the same evidence being presented to the jury
through multiple sources to prove the same facts. It is this redundancy or cumulative
nature of the evidence that proves fatal to appellant’s argument. This is so because the
admission of inadmissible evidence (such as hearsay) can be rendered harmless by the
receipt of admissible evidence proving the same facts. Mayes v. State, 816 S.W.2d 79,
88 (Tex. Crim. App. 1991); Nino v. State, 223 S.W.3d 749, 754 (Tex. App.–Houston [14th
Dist.] 2007, no pet.); Champion v. State, No. 06-04–0141-CR, 2005 Tex. App. Lexis 3733
at *9 (Tex. App.–Texarkana May 17, 2005, no pet.). And, upon reviewing the entire
record, we hold that to be true here. 
          Accordingly, the judgment of the trial court is affirmed.
 
                                                                           Brian Quinn
                                                                          Chief Justice

Publish.



/a>' );
 document.write( '' );
 }


          In advancing its appeal, and based upon the fact that Morris listed and attempted
to serve it at an incorrect address, Westmont contends that the trial court failed to require
Morris to comply with all the requirements for permissible substituted service of the
Secretary of State. Specifically, Westmont emphasizes that the record reveals the
Secretary of State’s certificate lists the incorrect address for Westmont’s registered agent
and reflects that process was returned on January 18, 2006, with the notation ”Not
Deliverable As Addressed, Unable To Forward.”
          In advancing its argument of lack of citation service, Westmont must show by a
preponderance of the evidence that the judgment was rendered without fault or negligence
on its part. Caldwell v. Barnes, 154 S.W.3d at 96-97. Service of process on corporations
is governed by the Texas Business Corporation Act. That act requires corporations to
maintain a registered agent and registered office and requires that changes in the
registered agent or office be made by filing a statement with the Secretary of State. Tex.
Bus. Corp. Act Ann. art. 2.10 (Vernon Supp. 2008). In instances in which a corporation
has failed to maintain a registered agent in Texas or whenever its registered agent cannot
be found with reasonable diligence at the registered office, the Secretary of State may be
served with process as an agent of the corporation. Id. art. 2.11.
          Here, the record reflects that Morris contacted the Secretary of State to ascertain
the office of Westmont’s registered agent and attempted to serve the agent at the address
provided by the Secretary of State. Although this may have been in compliance with a
literal interpretation of article 2.11 of the Texas Business Corporation Act,


 process was not
actually completed because 3535 Timmons Lane was an incorrect address. Morris then
attempted a new citation on the Secretary of State using the same incorrect address
previously used for service.
          The general presumptions of due service of citation in support of a default judgment
will not be indulged, and the record must show strict compliance with the provided manner
and mode of service of process. TXXN, Inc. v. D/FW Steel Co., 632 S.W.2d 706, 707
(Tex. App.–Fort Worth 1982, no writ), citing Whitney v. L & L Realty Corp., 500 S.W.2d 94
(Tex. 1973). However, in determining whether there has been strict compliance with article
2.11, the reviewing court looks to the face of the record and, if the record shows that the
defendant was served in the required manner, and the record shows pleadings which, if
true, would require the defendant to answer, the court may uphold the default. Id. In
TXXN, the court found the pleadings in question were sufficient to require an answer, that
a constable had been unable to serve citation at the corporation’s last known mailing
address, and that another, and subsequent citation, was properly served upon the
Secretary of State as agent for service of process. A certificate of the Secretary of State
showed that a copy of the citation was forwarded by registered mail to the address of the
appellant’s registered office but that it was returned marked “Not Deliverable As
Addressed, Unable To Forward.” Id. The reviewing court found the plaintiff’s pleadings
were sufficient to require an answer and that the citations of service and the certification
by the Secretary of State were sufficient to show that the appellant had been properly
served in compliance with article 2.11. Id. at 708. The court also noted that the manner
of service in that case was the result of the appellant’s failure to comply with the statutory
requirements that were designed to assure it of proper notice of pending suits and not
because of fault on the part of the appellee. Id. 
          However, in this case, the record reveals that Westmont had provided the Secretary
of State with the correct name and address of its registered agent. The address listed with
the Secretary of State was 3555 Timmons Lane, Suite 460, Houston, Texas. However,
each citation in the record reflects an incorrect address as 3535 Timmons Lane. Thus, the
record shows that the incorrect address utilized was not the fault of Westmont but that it
was Morris that utilized the incorrect address in each citation, even after being informed
that no building existed at 3535 Timmons and that 3555 Timmons was the correct address
for Westmont’s registered agent.
          That being true, no proper service was made upon Westmont, and we are obligated
to hold that the trial court abused its discretion in denying Westmont’s petition for bill of
review. This holding obviates the necessity for discussion of Westmont’s remaining
contentions. Tex. R. App. P. 47.1. The judgment of the trial court is reversed and the
cause remanded to the trial court.
 
John T. Boyd
Senior Justice