# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00445-CR
NO. 03-13-00446-CR

**Stephen Hollar, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-12-0625 & CR-13-0100, HONORABLE JACK ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In two different indictments, Stephen Hollar was charged with assaulting his wife Patricia Davis,[1] whom Hollar was living with at the time of his arrest. *See* Tex. Penal Code § 22.01 (setting out elements of assault). Specifically, the first indictment alleged that Hollar "intentionally, knowingly, and recklessly" caused bodily injury to "Davis by grabbing her ankle," and the second indictment alleged that he "intentionally, knowingly, and recklessly" caused bodily injury to "Davis by pushing or throwing her." Both indictments also alleged that Hollar had previously been convicted of assaulting a member of his family. *See id.* § 22.01(b) (elevating offense of assault from misdemeanor to third-degree felony if defendant has previously been convicted of assaulting person

---

[1] Although Patricia Davis is sometimes referred to as Patricia Davis Hollar, the briefing, indictments, and jury charges refer to Hollar's wife as Patricia Davis. For that reason, we will also refer to her as Patricia Davis or Davis.

"whose relationship to or association with the defendant is described by" Family Code). In addition, both indictments contained an enhancement paragraph alleging that Hollar had previously been convicted "of the felony offense of Assault Family Violence Repeat Offender." Hollar pleaded true to the enhancement allegation in both indictments. At the conclusion of the trial, the jury determined that Hollar was guilty of both charges and sentenced Hollar to 20 years' imprisonment for each charge. *See id.* § 12.42 (elevating permissible punishment range for third-degree felony offense to that of second-degree felony when "it is shown . . . that the defendant has" previously been convicted of felony offense)[2]; *see also id.* § 12.33 (setting out permissible punishment ranges for second-degree felony). Hollar appeals his conviction. We will affirm the district court's judgments of conviction.

## DISCUSSION

In two issues on appeal, Hollar challenges his convictions. First, he argues that his trial attorney was ineffective. Next, he argues that the evidence is legally insufficient to support his conviction under the second indictment, which alleged that he pushed or threw Davis. We will address his sufficiency challenge first and then address his remaining issue.

---

[2] We note that the provision of the Penal Code authorizing enhanced punishments for repeat offenders has recently been amended by the legislature and that those amendments became effective after Hollar's conviction in this case. *See* Act of May 9, 2013, 83d Leg., R.S., ch. 161, §§ 16.001-.003, sec. 12.42, 2013 Tex. Gen. Laws 622, 678; Act of May 23, 2013, 83d Leg., R.S., ch. 663, §§ 7-9, sec. 12.42, 2013 Tex. Gen. Laws 1751, 1753; Act of May 24, 2013, 83d Leg., R.S., ch. 1323, § 11, sec. 12.42, 2013 Tex. Gen. Laws 3506, 3512. However, because those amendments do not substantively alter the effect that a prior felony conviction has on the permissible punishment range for a third-degree felony offense, we refer to the current version of the statute. *See* Tex. Penal Code § 12.42.

**Legal Sufficiency**

As mentioned above, Hollar contends that the evidence was insufficient to support his conviction for the assault charge alleging that he pushed or threw Davis. In challenging the sufficiency of the evidence of this conviction, Hollar acknowledges that recordings of Davis from the day of the alleged assault were played for the jury and that on the recordings Davis informed law-enforcement personnel that Hollar had assaulted her and had thrown her across the room and onto the coffee table; however, Hollar insists that no evidence was ever introduced establishing that Davis ever complained of any "pain or injury." In fact, Hollar contends that the only direct evidence of pain came from a portion of one of the recordings in which Davis recounted that she experienced pain when Hollar twisted her leg behind her, but Hollar insists that this evidence of pain was only relevant to the other assault charge. Moreover, Hollar contends that, if anything, the evidence shows that Davis did not experience pain because the coffee table, which broke when she landed on it, "cushioned" her fall. Furthermore, although Hollar mentions Davis's statements on the recordings, he emphasizes that during her actual testimony, Davis testified that she had no recollection of the events in question and that she did not believe that Hollar was responsible for her falling. Finally, Hollar contends that the testimony from other witnesses corroborates Hollar's testimony that he did not cause Davis to fall. For these reasons, Hollar urges that the evidence was insufficient.

An assault is defined under the Penal Code as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another." Tex. Penal Code § 22.01(a)(1). Further, the Penal Code broadly explains that "'[b]odily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). "This definition encompasses even relatively minor physical

3

contact if it constitutes more than offensive touching." *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). Moreover, in order to prove that bodily injury occurred, there does not need to be any testimony that the victim experienced pain; on the contrary, "the jury is permitted to draw reasonable inferences from the evidence, including an inference that the victim suffered pain." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). Stated differently, "[a] fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.); *see also Wawrykow v. State*, 866 S.W.2d 96, 99 (Tex. App.—Beaumont 1993, pet. ref'd) (explaining that "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence").

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must keep in mind that it is the factfinder's responsibility to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, an appellate court must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). In addition, appellate courts should presume that any conflict among the inferences was resolved in favor of the conviction and should defer to that resolution. *Clayton*

*v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Under a sufficiency review, appellate courts consider all the evidence that the jury was allowed to consider regardless of whether the evidence was rightfully or wrongly admitted. *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim App. 2004).

In his brief, Hollar correctly points out that during her testimony at trial, Davis related that she did not want to testify in the proceedings and that she had filed an affidavit of non-prosecution after Hollar was arrested. The affidavit was admitted as an exhibit. In the affidavit, Davis averred that she has "difficulty with coordination" and that on the day of the alleged assault she had "taken medication, been drinking alcohol and been up for 30 hours or more" and "fell backwards over the coffee table and knocked" herself out. Further, Davis explained in her testimony that she could not recall the events in question and repeated the assertions from her affidavit that she had taken medication for vertigo and had been drinking. She also communicated that she was "not confident that [Hollar] did this," that she did not believe that Hollar "had anything to do with" her falling, that she thought that she had fallen on her own, and that she had been to the emergency room for falling since Hollar had been arrested.

As mentioned above, during his defense, Hollar called witnesses who testified that Davis had a history of falling down. First, Davis called Randall Reynolds who stated that he observed Davis fall one time when she was outside and that on another occasion, he found Davis lying on her driveway. In addition, Hollar called his daughter, Sarah Hollar, and her boyfriend, Scott Sullivan, to testify. In their testimonies, Sarah and Sullivan related that Davis had difficulty walking because she has poor balance. Furthermore, Sarah testified that Davis was not a credible person, and Sullivan described Davis as delusional.

5

Moreover, when testifying in his own defense, Hollar denied that he had assaulted Davis. In fact, he explained that Davis caused her own injuries by knocking the coffee table over when she jumped up for the phone.

However, although Davis testified that she could not recall the events on the day in question, recordings in which Davis stated that Hollar had assaulted her and described the details of the assaults were played for the jury. *See Moore v. State*, 169 S.W.3d 467, 469 n.3 (Tex. App.—Texarkana 2005, pet. ref'd) (explaining that it is not uncommon for victims of domestic violence to refuse to cooperate with prosecution or to recant their accusations). The first recording was of the 911 call that Davis made on the day in question, and the second recording was made by Deputy Shawn Booth when he responded to the 911 call. In those recordings, Davis stated that Hollar drank very heavily before the assault and that he gets aggressive when he drinks. Regarding the events leading up to the assault at issue, she stated that he began verbally and physically assaulting her in the morning, that he dumped the contents of an ashtray on her, and that he placed his genitals near her face while uttering profane language. Moreover, Davis told Booth that Hollar repeatedly pushed and shoved her for several hours, "knock[ed]" her around, twisted her leg behind her, twisted her ankle, and threw her across the room and onto a coffee table, which caused the coffee table to break into pieces. When discussing the contents of those recordings during her testimony, Hollar stated that she would "[n]ot purposely" lie to a police officer and that she did not sound intoxicated on the recordings.

In addition to the recordings, Booth testified regarding his own observations on that day. In his testimony, Booth testified that when he arrived, Davis was upset and that her ankle was

6

swollen.  Further, Booth related that when he went in the house, he noticed a broken coffee table on the floor.  Moreover, Booth explained that someone falling on a coffee table would suffer injury as well as pain.  During Booth's testimony, the State introduced photos of the scene, including photos of the broken table.

Finally, Hollar's previous wife, Barbara Hollar, testified regarding abuse that she suffered while married to him.  Specifically, Barbara stated that during their marriage, Hollar was physically and emotionally abusive, that he knocked her down some stairs while she was pregnant, that he broke her nose twice, that he kicked her in the back, that he pulled her hair, that he burned her with a frying pan, and that he tried to smother her.  Further, she revealed that Hollar had previously been convicted of assaulting her.

In light of the evidence summarized above and given the inferences that could reasonably be made from the evidence, including that Davis experienced pain, we cannot conclude that the evidence was legally insufficient to support Hollar's conviction under the terms of the indictment alleging that Hollar assaulted Davis by pushing or throwing her.  Accordingly, we overrule Hollar's second issue on appeal.

**Ineffectiveness Claim**

As mentioned above, in his first issue, Hollar urges that his trial counsel provided ineffective assistance of counsel during both the guilt and the punishment phases of the trial.[3]

---

[3] After the conclusion of the trial, Hollar filed a motion for new trial in which he generally alleged that his attorney provided him ineffective assistance of counsel; however, no hearing on the motion for new trial was held.

Although he mentions other alleged deficiencies in the background section of his brief, his argument section limits his challenges to the following 7 actions and inactions by his attorney:

- failure to object to the introduction of the recording made by Deputy Booth on the basis that it was testimonial in nature under *Crawford v. Washington*, 541 U.S. 36 (2004);

- failure to object on hearsay grounds to the portions of Booth's testimony in which he described the recording that he made of Davis;

- decision to ask Regina Burroughs, who was called to testify for Hollar, if she believed that Hollar was a violent person, which resulted in the introduction of evidence of Hollar's extensive criminal history during her cross-examination;

- failure to ask for a hearing under Rule of Evidence 403 regarding the prejudicial value of Barbara's testimony;

- failure to object to the State's introduction of documents related to Hollar's prior conviction for assaulting Barbara that showed facts pertaining to the prior offenses, probation violations, and extraneous offenses;

- failure to object during the punishment phase to the State's introduction of 22 booking sheets showing Hollar's prior arrests because those booking sheets did not establish beyond a reasonable doubt that Hollar had been convicted of the prior bad acts; and

- failure to object to and to request a limiting instruction regarding the State's repeated and improper references during the punishment phase to the effect that parole will have on Hollar's sentence.

For ineffectiveness claims, the defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To prevail on an ineffectiveness claim, the defendant must show that the attorney's "representation fell below an objective standard of

8

reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Decisions regarding effectiveness must be based on the totality of the representation. *Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (explaining that assessment of performance should consider cumulative effect of counsel's deficiencies). Moreover, although a defendant is not entitled to representation that is without error, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 392 S.W.3d at 653.

Generally speaking, a direct appeal does not provide a useful way to present an ineffectiveness claim because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Id.* (explaining that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). Moreover, before being deemed ineffective, trial attorneys should be given the opportunity to clarify their actions. *Id.* When that opportunity has not been provided, as in this case, an appellate court should not conclude that an attorney's performance was ineffective unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Six of the seven alleged instances of ineffective representation stem from purported failures to act on the part of Hollar's trial attorney, and the record before this Court is not sufficiently

developed to allow us to evaluate those supposed failures to act because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the claims of ineffectiveness. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Moreover, given the record before us, we do not believe that those alleged failures were so outrageous that no competent attorney would have committed them. Further, we note that although Hollar's trial attorney did not object to the admission of the recording made by Deputy Booth on testimonial grounds or to the testimony discussing portions of the video, his counsel did object on the ground that "it doesn't qualify as a present sense impression because it is a narrative and it is audio of the victim of the crime responding to questions asked by the police officers." We also note that although Hollar contends that his counsel failed to object to the 22 booking sheets, the record shows that his counsel did argue in a hearing outside the presence of the jury that the sheets should not be admitted because they were simply arrest records and did not show that Hollar was convicted of any crime. Regarding Hollar's assertion that his counsel failed to object to the State's comments about the effect of parole and failed to ask for a limiting instruction, the record shows when the State commented during its closing that the amount of time served by Hollar will be significantly less than the sentence imposed by the jury, Hollar's counsel objected and explained that the State's comment was an improper argument. In addition, the record shows that although the district court initially overruled the objection, it reconsidered Hollar's counsel's objection, sustained the objection, and instructed the jury that it could "not consider how parole law and good conduct time could be applied."

Turning to Hollar's remaining contention that his trial counsel provided ineffective assistance through his decision to ask Burroughs if she believed that Hollar was a violent person, we

10

again note that the record does not clearly establish what Hollar's counsel's motivations were when he asked Burroughs that question. Moreover, although Burroughs's answer resulted in the admission of evidence of Hollar's prior criminal history, we note that Burroughs answered by stating that Hollar was not violent, was caring, and was the "best person [she] could ever ask to know," and Hollar's counsel might have concluded that the potential benefit of having an individual who currently knows Hollar testify regarding her belief that Hollar was a peaceful person might outweigh the potential negative consequences that could result. In light of the record before us, we cannot conclude that Hollar's counsel's action was "so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

Even though it is unnecessary to address the issue further, we do note that "the totality of the representation" provided by an attorney must be considered when assessing his effectiveness. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). During voir dire, Hollar's attorney extensively questioned the jury panel regarding their ability to serve on the jury; asked the panel if they could think of reasons why an alleged victim might falsely accuse someone of a crime, about their prior interactions with law-enforcement personnel, and about the effect that a defendant's prior convictions might have on their decision making; and moved to strike several panel members for cause. Further, the record also shows that Hollar's counsel objected to the admission of the recording of the 911 call on various grounds, objected to the admission of the recording made by Deputy Booth, cross-examined the State's witnesses, and called various witnesses to testify on Hollar's behalf. Moreover, during his closing argument, Hollar's attorney emphasized that Davis testified that Hollar did not assault her and that she did not remember the

11

events on the day in question, and his attorney also discussed how the State has the burden to prove that Hollar was guilty and how even though there was evidence of Hollar's prior misdeeds, the jury should only find him guilty if they conclude that he was guilty of the offense actually charged.

In light of the foregoing, we overrule Hollar's first issue on appeal.[4]

## CONCLUSION

Having overruled Hollar's two issues on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: August 14, 2014

Do Not Publish

---

[4] In general, rejected claims made in a direct appeal are "not cognizable on habeas corpus." *Ex parte Nailor,* 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). However, that prohibition does not apply when an appellate court "rejects a claim of ineffective assistance of counsel because the record on direct appeal does not contain sufficient information to adequately address and resolve a particular allegation of counsel's deficient performance," and the claim may be considered "in a later habeas corpus proceeding if he provides additional evidence to prove his claim." *Id.*